Syllabus.

## SAMUEL FRAZER *et al.*

### *v.* ·

## THE FRAZER LUBRICATOR COMPANY.

### *Filed at Ottawa May 12, 1887.*

| 121 | 147 |
| 142 | 507 |

| 121 | 147 |
| 110a | 185 |

1. TRADE-MARK—*consisting of one's own name—and as the subject of sale and transfer, and the rights acquired thereby.* While it is true, as a general proposition, that one can not, by using his own name as a trade mark, deprive another having the same name from using it in conducting his own business, yet the latter can not, under cover of using his own name, be permitted to resort to any device or artifice by which the public will be led to purchase his goods or manufactured articles, under the belief that they are those of the former.

2. A party has the right to use his own name in conducting his business, either by himself or in connection with others, if done in a proper and legitimate way; and this right is a valuable one, especially when he is the discoverer of a valuable article of trade then being manufactured, and sold on the market. This right, like most other property rights, is the subject of sale and transfer.

3. Where a party sells out an established business, and with it his own name, to be used in connection with such business, his vendees will acquire a right to the use of the name, and he can not afterward resume it in carrying on the same business.

4. This is on the old principle that a title based on a sale for a valuable consideration, under a contract fairly entered into between parties *sui juris*, will be upheld and enforced, in equity as well as at law. After the sale of the right to use a party's name in the manufacture and sale of an article, a court of equity will enjoin him from resuming its use in the same business.

5. The patentee of a rosin oil used in manufacturing the inventor's axle grease, known as "Frazer's Axle Grease," sold all his interest under his patent, and conferred on his grantees and their "*successors*," the right to use his name, "so far as it might be necessary to use it, as a trade-mark, or as *indicating the material or product* which had theretofore been manufactured under said letters patent, and generally known and called, 'Frazer's Axle Grease,'" etc. The contract further provided, that the vendor "confers the authority to use his name, as aforesaid," upon the grantees, etc., "exclusively," and bound the vendor not to confer such authority upon any one else: *Held*, that the vendor thereby bound himself not thereafter to use his own name, or suffer it to be used by others, in the manufacture of grease, or any other product in which the rosin oil was an ingredient.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. HENRY M. SHEPARD, Judge, presiding.

Messrs. D. & T. J. SHEEAN & McHUGH, for the appellant:

The proof shows that the two greases are positively different, and therefore the court erred in holding they were substantially the same.

There is no trade-mark in the use of a name. Cooley on Torts, 362; Browne on Trade-marks, secs. 197, 296, 350; *Meneely* v. *Meneely,* 62 N. Y. 427.

The use of a personal name in a fair, honest and ordinary business can not be prevented, even if damage results therefrom. *Croft* v. *Day,* 7 Beav. 84; *Holloway* v. *Holloway,* 13 id. 213; *Gilman* v. *Hunnewell,* 122 Mass. 129; *McLean* v. *Fleming,* 96 U. S. 252; *Faber* v. *Faber,* 49 Barb. 357.

The name of a man may lose personality, and become a mere indicator of a quality. Browne on Trade-marks, secs. 178, 181; 47 Am. Dec. 294.

There can be no exclusive right in the use of a name which is the proper descriptive appellation of an article. *Phalon* v. *Wright,* Am. Trade-mark Cases, 307; *Caswell* v. *Davis,* 58 N. Y. 233; *Candee* v. *Deere,* 54 Ill. 465.

A complainant must not sell his manufactures as those of another, even if he purchased from the other the right to use his name. Browne on Trade-marks, secs. 474, 361, 478, 71.

A trade-mark may be assigned, but if the mark be so personal in its character that it is identified with the person, and imports that the goods bearing it are manufactured by him, then the rule would be different, for the law will not lend itself to the perpetration of a fraud. Browne on Trade-marks, sec. 437.

A trade-mark is transferable with the transfer of the manufactory or business. (Browne on Trade-marks, sec. 360.) But if it indicates the product of a certain person, the law will

not permit it to be used for falsehood in applying it under an assignment to another's goods.  Ibid. sec. 361.

Any agreement in general restraint of trade is illegal and void.  *Craft* v. *McConoughy*, 79 Ill. 346; *Navigation Co.* v. *Winser*, 20 Wall. 68; *Keeler* v. *Taylor*, 53 Pa. St. 467; *Curtis* v. *Cohey*, 68 N. Y. 300.

Even contracts limited to the State, or a great part of the country, are held void.  *Wright* v. *Bydar*, 36 Cal. 342; *Moore* v. *Bonnet*, 40 id. 251; *Nobles* v. *Bates*, 7 Cow. 307; *Chappel* v. *Brockway*, 21 Wend. 157; *Morris* v. *Coleman*, 18 Ves. 436; *Hind* v. *Gray*, 1 M. & G. 195; *Taylor* v. *Blanchard*, 13 Allen, 370; *Lawrence* v. *Kidder*, 10 Barb. 641; *Price* v. *Green*, 16 M. & W. 346.

Messrs. McCLELLAN & CUMMINS, Mr. M. W. FULLER, and Mr. L. L. BOND, for the appellee:

It is admitted that the two greases are composed of the same ingredients,—rosin oil, lime, sal-soda, palm oil and water.  There is no substantial or perceptible difference in the proportions in which they are contained, or in their appearance or effect.

A party can not be permitted to sell a patent or a trademark, and then dispute its validity.  *Curran* v. *Burdsall*, 20 Fed. Rep. 835; *Walton* v. *Laveter*, 8 C. B. 162; *Chambers* v. *Chrichley*, 23 Beav. 374; *Kidd* v. *Johnson*, 100 U. S. 617.

A trade-mark can not be sold in gross, and be applied to the goods of a stranger.  (*Manhattan Co.* v. *Wood*, 108 U. S. 219.)  But the successors to the same business may acquire the mark. (*Pepper* v. *Labrot*, 8 Fed. Rep. 29; *Kidd* v. *Johnson*, 100 U. S. 617.)  And this, without mentioning the trademark separately.  *Shipwright* v. *Clements*, 19 W. R. 599; *McLean* v. *Fleming*, 96 U. S. 245.

Ordinarily there can be no exclusive right to the proper name of an individual, as against another of the same name.  *Meneely* v. *Meneely*, Cox's Manual, 472.

A man can not employ his own name even, in such wise as to fraudulently divert the trade of another, of like name, already established in the business. *Shaver* v. *Shaver*, 54 Iowa, 208; *Landreth* v. *Landreth*, 22 Fed. Rep. 41; *Croft* v. *Day*, Cox's Manual, 76.

It is of no consequence to complainant's title whether the individual whose name is identified with the product, is still connected with the business or not. *(Rogers Co.* v. *Rogers Co.* 11 Fed. Rep. 495; *Dixon Co.* v. *Guggenheim*, 2 Brewst. 321; *Thorley Co.* v. *Massam*, Cox's Manual, 668.) But if that individual withdrew from the business, after giving his name thereto and seeing it applied to the product of the company, he can not resume his name at will, in a like business. His conduct works an estoppel. *Holmes* v. *Holmes*, Cox's Manual, 340.

If a party bargains away his name by contract, he can not resume it in the business with which it has become identified. The purchase vests title in the assignee. *Witt* v. *Corcoran*, Cox's Manual, 423; *Churton* v. *Douglass*, id. 172; *Stonebraker* v. *Stonebraker*, id. 333; *Gillis* v. *Hall*, id. 335; *Grow* v. *Seeliman*, 47 Mich. 607.

A transfer and succession of business of making an article, carries with it its trade-marks, by implication. *Shipwright* v. *Clements*, 19 W. R. 599; *Spring Co.* v. *Spring Co.* 45 N. Y. 291; *Witthaus* v. *Braun*, 44 Md. 303; *Kidd* v. *Johnson*, 100 U. S. 617.

The law presumes, when one intentionally uses or closely imitates another's trade-marks, merchandise or manufactures, that he does it for the fraudulent purpose of inducing the public, or those dealing in the article, to believe that the goods are those made or sold by the latter, and of supplanting him in the good will of his trade or business. *Taylor* v. *Carpenter*, 11 Paige, 292.

The rule is, that the court will enjoin any imitation calculated to deceive ordinary purchasers. *Crawshay* v. *Thomp-*

*son,* 4 M. & G. 385; *Davis* v. *Kendall,* 2 R. I. 556; *Holmes*
v. *Holmes,* 37 Conn. 278; *Witherspoon* v. *Currie,* 22 L. T. R.
(N. S.) 260; *Hookman* v. *Pottage,* 26 id. 755.

To be enjoinable it is not necessary that the imitation
should be complete. The imitation may be limited and par-
tial, and still be enjoinable. *Lockwood* v. *Boswick,* 2 Daly,
(N. Y.) 521; *Franks* v. *Weaver,* 10 Beav. 297; *Shrimpton* v.
*Laight,* 18 id. 164; *Coffeen* v. *Brinton,* 4 McLean, 516; *Clark*
v. *Clark,* 25 Barb. 76; *White Lead Co.* v. *Masury,* id. 416;
*Hostetter* v. *Vowinkle,* 1 Dill. 329.

To be enjoinable it is not requisite that the imitation should
be intentionally deceptive. *Millington* v. *Fox,* 3 M. & C. 338;
*Dale* v. *Smithson,* 12 Abb. Pr. 000.

It is no defence that the imitator informs purchasers of
the imitation. It is no answer for the defendants to say that
they sold the bitters as theirs. *Coats* v. *Holbrook,* 2 Sandf.
Ch. 586; *Chappel* v. *Davidson,* 2 K. & J. 123.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

The appellee, on the 30th day of August, 1884, exhibited
its bill in the Superior Court of Cook county, against the ap-
pellants, to enjoin the latter from using the name of "Fra-
zer," "Samuel Frazer," "S. Frazer" or "S. Frazer & Co.," or
the name "Frazer," "in any way, in the manufacture of axle
grease, according to the process and of the ingredients used
by the appellee in the manufacture of Frazer's Axle Grease,
or of axle grease of any kind whatsoever," etc. The court,
upon the hearing, rendered a decree in substantial conformity
with the prayer of the bill, and the defendants appealed to
the Appellate Court for the First District, where the decree
was affirmed. By the present appeal the record of the pro-
ceedings in the lower courts is brought here for review.

In 1856, or thereabouts, appellant, Samuel Frazer, com-
menced, at Galena, Illinois, the manufacture and sale of an

axle grease, known and designated in the trade as "Frazer's Axle Grease." It was also called "Frazer's Grease," and "Frazer's Lubricator." The process of manufacturing this grease is Frazer's own discovery. The product of the discovery is obtained by combining rosin oil, lime, sal-soda, palm oil and water, in certain proportions. The rosin oil used for this purpose is produced by the distinctive distillation of rosin, also a discovery of Frazer's, for which he received a patent in 1860. In 1868, with a view of changing the location of his business from Galena to Chicago, he formed a co-partnership with George B. Swift, Edward Hunter and Otis S. Favor, under the firm name of Frazer, Swift & Co., which was subsequently changed to that of the "Frazer Lubricator Company." In February, 1870, John A. Packard became a member of the firm, and Frazer retired from it. The terms and conditions upon which this change in the partnership was effected, are fully shown by the following written agreement, which was duly signed and sealed by all the parties thereto:

"This agreement, made and entered into the 7th day of February, A. D. 1870, by and between Samuel Frazer, of Galena, Illinois, (now temporarily residing in Chicago, in said State,) party of the first part, and Edward Hunter, John A. Packard, Otis S. Favor and George B. Swift, of said Chicago, parties of the second part:

"Witnesseth: That for a valuable consideration, and the further consideration of ten dollars to the party of the first part paid by the party of the second part, the receipt whereof is hereby confessed and acknowledged, the party of the first part hereby sells, assigns, transfers and conveys unto the said parties of the second part all his right, title and interest in and unto certain letters patent, (and the invention thereby secured,) which were issued to the party of the first part by the United States of America, on the 12th day of June, in the year of our Lord one thousand eight hundred and sixty,

bearing thereon the number of said patent, to-wit, No. 28,663, said letters patent embracing and covering, in general terms, 'a new and useful improvement in distillation of oils from rosin,' said invention being particularly described in the schedule and diagram attached to said letters patent, and of record in the patent office in the city of Washington, in the District of Columbia. The party of the first part, for the consideration aforesaid, hereby authorizes the parties of the second part, their assigns, successors, heirs, administrators, executors or legal representatives, to use his name, so far as it may be necessary to use it, as a trade-mark, or as indicating the material or product which has heretofore been manufactured under said letters patent, and generally known and called 'Frazer's Axle Grease,' 'Frazer's Lubricator,' or 'Frazer's Grease,' and confers the authority to use his name, as aforesaid, upon the parties of the second part, their assigns, successors, etc., exclusively, and binds himself to confer that authority upon no other person or persons, corporation or association whatsoever; and he hereby sells, assigns and transfers, for the same aforesaid consideration, unto the said parties of the second part, their assigns, successors and legal representatives, all interest, right and title which he may have in any renewals or extensions of said letters after the expiration thereof, and hereby expressly agrees and binds himself unto the said parties of the second part, their assigns, successors or legal representatives, to make in his own name, but for the benefit of said parties of the second part, all or any applications, petitions or requests in writing, or otherwise, which may be required by said parties of the second part for the purpose of obtaining any renewal, extension or re-issuance of said letters patent, and without charge therefor, provided said parties of the second part assume and pay all costs and expenses attendant thereupon; and said party of the first part agrees and binds himself not to engage hereafter in the manufacture, directly or indirectly, of the product or

material secured by said letters patent and known as afore-
said, and not to use, or authorize the use of, his name as a
trade-mark, or otherwise, for the manufacture of said lubri-
cator, axle grease or grease, or any other product made under
said letters patent. The parties of the second part hereby
agree to hold said party of the first part harmless against all
or any costs or liabilities arising from the use of his name,
as aforesaid."

Frazer received for his interest in the business and assets of
the concern, and the rights secured under the above agreement,
in property and money, altogether, $17,500, most, if not all,
of which was paid by Packard, who took his place in the firm.
On the 29th of April following, the members then composing
the firm of the Frazer Lubricator Company, became incorpo-
rated under the same name, and the corporation thus formed,
being the present appellee, succeeded to all the rights, prop-
erty and assets of the concern. Since that time the same
business has been successfully carried on, and so extended
by the company until it has become one of vast proportions,
and highly remunerative to the stockholders. At the time of
Frazer's withdrawal from the business, the process of making
the axle grease was known only to himself and one or two
others, and even now it appears to be known to but few.

In 1879, Frazer obtained a patent from the government
for what he claimed to be an improvement in the manufac-
ture of the axle grease, in which patent reference is made to
the patent of 1860. In the following year he applied for and
obtained a second patent for another discovery and improve-
ment upon the process of making said axle grease. Armed
with these additional patents,—or, rather, the last one, as he
claims the first was issued by mistake,—he, in 1884, in con-
nection with others, under the name of "S. Frazer & Co.,"
commenced again, at Galena, the manufacture of axle grease,
which was put up and sold in packages marked "Superior
Axle Grease." Below this brand or mark was the name of

the firm, "S. Frazer & Co.," in good-sized capitals. While these packages differed, in a number of particulars, from those put up by appellee, yet in other respects, it must be admitted, there was a striking resemblance between them, which, when taken together with the name "Frazer," was well calculated to mislead dealers not knowing there was more than one company engaged in the same kind of business, or not familiar with the marks by which the packages of the two establishments were distinguishable. Appellee regarding the business of appellants, in the manner carried on by them, as an invasion of its rights, filed the present bill, for the purpose and with the result already stated.

Able and elaborate arguments, presenting the respective contentions of the parties, have been filed in the case, which exhaustively treat of every question of law or fact presented by the record that has either a direct or remote bearing upon the merits of the controversy ⸜ In addition to this, there have been filed, with the briefs of counsel, written opinions in the case, in the Superior as well as in the Appellate Court, in both of which the salient and controlling features of the case are ably and fairly presented. We fully concur both in the reasoning and conclusion of those opinions.

Under the circumstances stated, entertaining the opinion we do, it would be a useless task to go over the whole ground again, which would necessarily be, in the main, but a repetition of what has already been so well said by the lower courts. We shall therefore content ourselves with briefly noticing a few of the points upon which appellants seem to place most reliance, and calling special attention to some of the provisions of the contract, above set forth, and upon which the conclusion we have reached is mainly rested.

Among other things, it is complained that the lower courts committed an "unpardonable error" in finding the two greases are substantially the same. We do not think the facts warrant the strong terms in which this complaint is made. It is

an undisputed fact that both greases are made from a combination of rosin oil, lime, sal-soda and water. In this respect they are certainly alike. So far as the product is concerned, from the evidence produced, it is, to say the least of it, doubtful which, if either, is the better grease. Viewing the question, then, from a practical aspect, we think the lower courts were fully justified in finding the two greases were substantially the same. It is true the analyses which were made,—being four in number, by as many different chemists,—show some differences in the relative proportions of the ingredients used in making the two greases, but the diversity in this respect, conceding it to exist, is not, in our judgment, so great as to materially affect the rights of the parties to this controversy. So far as these analyses are concerned, it is worthy of note that no two of them are alike.

It is also earnestly contended, that there can be no trademark in the name "Frazer," and hence it is concluded there was error in the decree in enjoining Frazer from the use of his own name in connection with the business of the firm of which he was a member. It is certainly true, as a general proposition, that one can not, by using his own name as a trade-mark, deprive another having the same name, from using it in conducting his own business. But even here the latter will not, under cover of using his own name, be permitted to resort to any device or artifice by which the public will be led to purchase his goods or manufactured products under the belief that they are those of the former. In the view we take of the case, we do not think it important whether the expression "Frazer," "Frazer's Grease" or "Frazer's Axle Grease," is, strictly speaking, a trade-mark or not. The important question, in our opinion, is, whether, under the facts averred in the bill, and proved on the hearing, Frazer, and those associated with him in the business, have the right to use his name in connection with the manufacture and sale of axle grease of the kind and quality made and sold by

them. This conclusion we rest upon the contract itself. Before the making of the contract, Frazer, like any other person who had not voluntarily parted with it, had the right to use his own name in conducting his own business, either by himself or in connection with others, provided it was done in a proper and legitimate way. The right to thus use his name was a valuable one, rendered doubly so in his case, because it was that of the discoverer of a valuable and popular article of trade then being manufactured and sold on the market by himself, under that name. But this right, like most other property rights, was the subject of sale and transfer, and, as we have already seen, he did, for a valuable consideration, so dispose of it. The question now is, will equity permit him, and those acting in concert with him, to defeat the right and title thus disposed of, in the hands of the assignee of his grantees.

The principle seems to be well settled, that where a party sells out an established business, and with it his own name, to be used in connection with such business, he can not afterwards resume it in carrying on the same business. *Gillis* v. *Hall,* Cox's Am. Tel. Trade-mark Cases, 596; *Witt* v. *Corcoran,* Cox's Manual, 423; *Charton* v. *Douglass,* id. 172; *Ayer* v. *Hall,* 3 Brewst. (Pa.) 509; *Probasco* v. *Bouyan,* 1 Mo. App. 241; *Filkins* v. *Blackman,* 13 Blatchf. 440.

The case in hand falls directly within the doctrine of the cases cited. There is nothing, however, new in this doctrine. It is the old principle, that a title based on a sale for a valuable and adequate consideration, fairly entered into between parties *sui juris,* will be upheld, and enforced in equity as well as at law.

It will be seen, by looking at the contract in question, that Frazer, in the first place, sells and conveys, absolutely, all his right, title and interest in and to the patent for making the rosin oil. He then proceeds to confer on the grantees, their "*successors,*" etc., the right to use his name, "so far as it might

be necessary, to use it as a trade-mark, or *as indicating the material or product* which had theretofore been manufactured, under said letters patent, and generally known and called "Frazer's Axle Grease," etc. Had the agreement stopped here, there would, at least, have been a question whether this grant of the right to use Frazer's name for the purpose stated, was intended to be exclusive. But as this right, unless exclusive, would have been of little or no value, it was a matter of great importance to the grantees that all doubt whatever on the subject should be removed, and for this purpose it is then added, that Frazer "confers the authority to use his name, as aforesaid, upon the parties of the second part, to their assigns, successors, etc., exclusively." He also expressly binds himself to confer such authority upon no other person or persons, corporation or association, whatsoever. Having thus covenated not to confer the right to use his name upon any one else, he then stipulates as follows : "And the said party of the first part agrees and binds himself not to engage in the manufacture, directly or indirectly, of the product or material secured by said letters patent, *and known as aforesaid.*" If this covenant stood alone, there might be some question as to what was meant by it. But when taken in connection with the provision preceding it, which gives the grantees the right to use Frazer's name as a trade-mark, or "as indicating the material or product" theretofore manufactured under the patent, "known and called Frazer's Axle Grease," etc., there is no room to doubt what was intended. The words, "known as aforesaid," evidently have reference to the same thing which is qualified and described by the words "known and called," in the preceding stipulation in question,—namely, "Frazer's Axle Grease."

It is very clear that Frazer intended, and did, so far as the law would permit, to absolutely bind himself, without limit or conditions of any kind whatever, to not again engage in the manufacture of the rosin oil or grease in question. Whether

it was competent for him to do this, it is not important to inquire, since, for the purposes of the conclusion we have reached, it way be conceded it was not, for, however that may be, he clearly did have the power to sell the exclusive use of his name in conducting that particular business. That power, as we have already seen, he exercised, receiving therefor a valuable consideration, and justice and equity alike demand that he should be held to his agreement.

Finally, Frazer expressly covenants *not to use, or otherwise authorize the use of, his name as a trade-mark, or otherwise, for the manufacture of said lubricator, axle grease or grease, or any other product, under said letters patent.* It will be observed, that the grease or axle grease to which the contract relates, is, throughout the instrument, characterized as a grease or product made *under the patent.* Yet it will be remembered the patent does not cover the process of making the grease. It only extends to the principal ingredient in it,—namely, the rosin oil. The process of obtaining that, alone, is covered by the patent, and it was therefore clearly in this sense the grease is spoken of, in the contract, as being made under the patent. When, therefore, Frazer covenanted that he would not use his name himself, or permit it to be used by others, in the manufacture of grease, or any other product "under said letters patent," he simply and obviously intended to bind himself not to use his own name, or suffer it to be used by others, in the manufacture of the rosin oil, or any grease or other product of which the rosin oil is a constituent part. This covenant, so far as the use of Frazer's name is concerned, we hold, as already stated, to be a valid and binding obligation, both at law and in equity. That it has been violated by Frazer, and those acting in concert with him, is equally clear.

The judgment will be affirmed.

*Judgment affirmed.*