The State *v.* Hagen.

## No. 736.

## THE STATE *v.* HAGEN.

TRADE-MARKS AND LABELS.—*Offensive Matter in.—Effect.—Infringement on.—Cigar Makers' Union.*—A label used by the Cigar Makers' International Union of America contained, among other things, the following: "This certifies that the cigars contained in this box have been made by a first-class workman, a member of the Cigar Makers' International Union of America, an organization opposed to inferior ratshop, coolie, prison, or filthy tenement-house workmanship." The construction to be put upon this language is not that it is an attack upon the products of all other laborers, and that it characterizes their products as unfit for use, but that the language, in its purpose and effect, is defensive and not offensive.

SAME.—*Protective Interest in.—Fraud and Counterfeiters.*—The members of such union have an interest in their label which, in equity, the law will protect against frauds and counterfeiters, whether such label be a legal or technical trade-mark.

CRIMINAL LAW.—*Trade-Marks and Labels.—Infringement on.—Statute Construed.—Act of March 6, 1891.—Indictment.—Sufficiency of.*—An indictment was found against one for infringing upon and simulating the label of the Cigar Makers' International Union of America, which was as follows: "Sept., 1880. Issued by authority of the Cigar Makers' International Union of America. Union Made Cigars. This certifies that the cigars contained in this box have been made by a first-class workman, a member of the Cigar Makers' International Union of America, an organization opposed to inferior, ratshop, coolie, prison, or filthy tenement-house workmanship. * * * All infringements upon this label will be punished according to law. "A. STRASSER, President,

"C. M. I. U. of America."

The label was registered under the act of March 6, 1891, Acts 1891, page 317.

*Held,* that before a criminal action can be maintained under this statute, it must appear in the indictment that the label was such an one as was entitled to registration, the admission to registration upon a mere *ex parte* showing not being conclusive.

*Held,* also, that the label does not come within the provisions of the above statute so as to subject infringers thereon to the penalty prescribed in the above statute, for the reason that the right to the " exclusive " use of the label is not confined to Indiana members of the union, but extends, as well, to members outside of this State.

SAME.—*Criminal Statutes, How Construed.*—Criminal statutes must be strictly construed.

From the St. Joseph Circuit Court.

*A. L. Brick* and *P. D. Connolly*, for appellant.

*L. Hubbard*, for appellee.

GAVIN, J.—Upon this appeal the correctness of the action of the court in sustaining a motion to quash the indictment is brought before us.

The indictment is in two counts, similar, except as to the acts charged to have been done by defendant.

The allegations of the indictment, so far as it is necessary to give them, are that "the Cigar Makers' International Union of America is a voluntary incorporated association of practical cigar makers and small manufacturers of cigars, who employ no hands, formed for the purpose of promoting the mental, moral and physical welfare of its members, by maintaining a high standard of workmanship in making cigars, and fair wages among other things."

This national union is composed of local unions in the various cities and towns of the different States of the Union. This national body adopted a label to be placed on all boxes containing cigars made by members of the union, wherever they might be, all members of the union, both within and without the State of Indiana, having a right to use it. The organization of various local branches. in Indiana is alleged, including one at South Bend. It is further alleged that by representatives of the various Indiana local unions their label was registered by the Secretary of State, after complying with the requirements of the act of 1891. Acts of 1891, 317.

The appellee is charged with selling and having cigars in boxes upon which were affixed a false and counterfeit label, in imitation of the said union label. Both the true and counterfeit label are affixed to the indictment, and they are, with the exception of one or two letters, identical. The label reads as follows:

The State *v.* Hagen.

"Sept., 1880.

"Issued by authority of the Cigar Makers' International Union of America.

"Union Made Cigars.

"This certifies that the cigars contained in this box have been made by a first-class workman, a member of the Cigar Makers' International Union of America, an organization opposed to inferior ratshop, coolie, prison, or filthy tenement house workmanship. Therefore we recommend these cigars to all smokers throughout the world.

"All infringements upon this label will be punished according to law.        "A. STRASSER, President

"C. M. I. U. of America."

Upon the left is the seal of the order and upon the right is space for a local seal, with the words "Local Seal."

On this appeal several objections are urged to the sufficiency of this indictment, but no question is made as to the constitutionality of the law, upon which, however, the case of *Robey* v. *Smith*, 131 Ind. 342, S. C. 30 N. E. Rep. 1093, may have some bearing. No such question being raised by the parties, and the cause having been transferred to this court by the Supreme Court, we take it up for determination upon the propositions presented to us.

It is insisted by appellee that this label is itself of such a character as places it beyond the protection of law by reason of its statement that the organization is opposed to all "inferior ratshop," etc., "workmanship," and in support of this proposition a decision of the Supreme Court of Pennsylvania is cited. *Mc Vey* v. *Brendel*, 22 Atl. Rep. 912.

We do not think, however, that the language used is fairly susceptible of the construction there put upon it— that it is an open attack on the products of *all* other laborers and a characterization of their products as unfit for use.

We do not believe that the necessary inference is, by any means, that this union is making " war upon all cigar makers who do not belong to it, and driving their product out of the market by representing it as coming from inferior ratshops, from coolies, prisons or filthy tenement houses," as construed by that court.

The purpose for which this association was formed is stated in the indictment to be (and this we must take to be true) promoting " the mental, moral and physical welfare of its members, by maintaining a high standard of workmanship in making cigars, and fair wages among other things." Such a purpose is certainly a laudable one, to be commended by all good citizens. It thus asserts itself to be a defensive, not an offensive, alliance, to be used as a shield for their own protection—not as a sword with which to strike down others. Thus used, it is entitled to the protection of the law. The statement of the label is that the organization is opposed to inferior workmanship of various kinds, or from various named sources. To construe this language by inuendo, as claimed by appellee, is to hold every intendment against the association, and we see no reason for doing this in favor of those who, it is admitted, have no moral right to use the label.

The construction which we give to this label is supported by *Bloete* v. *Simon*, 19 Abb. New Cas. 88; *People* v. *Fisher*, 3 N. Y. Sup. 786; *Carson* v. *Ury*, 39 Fed. Rep. 777.

Trade-marks or labels with references to competitors more vigorous than these words have been upheld. *Wolfe* v. *Hart*, 4 Vict. L. R. (Austral.) 125; *Hostetter* v. *Adams*, 10 Fed. Rep. 838; *Metcalfe* v. *Brand*, 86 Ky. 331.

It is also urged that neither this association nor its members can have any right to protection for this label because they are only workmen, and not manufacturers or traders, who alone can have a lawful trade-mark or label, and in support of this doctrine we are cited to *Cigar Makers*', *etc.*, *Union* v. *Conhaim*, 41 N. W. Rep. (Minn.) 943;

*Schneider* v. *Williams*, 14 Atl. Rep. (N. J.) 812; *Weener* v. *Brayton*, 25 N. E. Rep. 46, 152 Mass. 101; *Mc Vey* v. *Brendel, supra.*

In these cases this same label was under consideration, and all seem to have been determined upon the theory that the workmen were asserting a right to a technical trade-mark, and this they were not entitled to maintain, partly because they were not manufacturers nor actually dealing in any vendible article, and partly because the mark does not distinguish the product of one manufacturer from another.

In *Canal Co.* v. *Clark*, 13 Wall. 311, it is said: "The trade-mark must, either by itself or by association, point distinctively to the origin or ownership of the article to which it is applied."

So, also, *Manufacturing Co.* v. *Trainer*, 101 U. S. 51; *Godillot* v. *Harris*, 81 N. Y. 263, holds that the mark need not indicate any particular person as the maker.

The cases of *People* v. *Fisher* and *Bloete* v. *Simon, supra,* take the position that such an association is entitled to hold and be protected in this label as a trade-mark, and it may be urged with considerable force that where the label indicates the origin of the goods, so far as the workmanship is concerned, guaranteeing that they have been made by one of a large association which has acquired a high reputation for the skill of all its members, this is a sufficient indication of origin without its pointing out the particular individual from whom it emanated, and that an association may acquire such a general reputation for the high character of its workmanship as that its mark may be such an assurance of the worth of the goods as makes it a property right in the association or membership in general.

We merely advert to these divergent propositions without entering upon the wide field which they open up, because we are relieved from that duty by reason of the fact that, even if it be granted that this label is not a technical

trade-mark, still it is such a label as that those who have a lawful right to use it, and who are specially damaged by one using it fraudulently and without right, are entitled to the equitable protection of the law against such wrong-doers.

The distinction between a trade-mark and a mere label is sustained by Browne on Trade-marks, sections 89c, 124, 127.

That protection is given against such fraudulent simu-lation, even of a label, is maintained by *McLean* v. *Flem-ing*, 96 U. S. 245; *Wolfe* v. *Hart, supra; Peltz* v. *Eichele*, 62 Mo. 171; *Anheuser-Busch Brewing Ass'n* v. *Piza*, 24 Fed. Rep. 149; *Sawyer* v. *Horn*, 4 Hughes, 239; *Dixon Crucible Co.* v. *Guggenheim*, 2 Brewster, 321; *Foster, etc., Co.* v. *Blood Balm Co.*, 77 Ga. 216; *Frazer* v. *Frazer Lub. Co.*, 121 Ill. 147; *Metcalfe* v. *Brand, supra; Smail* v. *Sanders*, 118 Ind. 105; *Carson* v. *Ury, supra.*

The last case cited was a suit brought by a member of this same union, who both made and sold cigars. The publication of false labels was there enjoined, and the principle upon which such relief is granted is well stated in that case: "In short, this is not a trade-mark case. As I view it, it is a bill filed to restrain the defendants from perpetrating a fraud which injures the complainant's business and occasions him a pecuniary loss. Even where no trade-mark was infringed or involved, courts of equity have granted injunctions on more than one occasion against the use upon goods of certain marks, labels, wrap-pers, etc., where the evident design of such use was to deceive the public by concealing the true origin of the goods and making it appear that they were the product of some other manufacturer of established reputation, thereby depriving the latter of a portion of the patronage that would otherwise come to him, or injuring the reputa-tion of his goods." After citing a number of decisions in support of this statement, Judge Thayer proceeds:

" No valid reason can be assigned why the principle which underlies these decisions does not entitle the complainant to relief. The right of the court to grant relief in the cases cited was predicated upon the ground that the conduct of the parties proceeded against, in intentionally marking, labeling, wrapping, or advertising their wares so that they would be mistaken for the goods of some other manufacturer, was fraudulent. That and the fact that the fraud complained of had a natural tendency to injure the business of the person whose marks, labels, etc., had been simulated, by lessening his sales or injuring the reputation of his goods, was held sufficient to give the person who had thus sustained or was liable to sustain special damage a right to equitable relief.

" In the case at bar complainant shows that he has a clear right to use the union label, and that the right to use it is a valuable privilege, inasmuch as it enhances the value of the cigars which he manufactures and sells and increases the demand therefor."

We do not here have occasion to determine whether, to enforce this right in equity, an action must necessarily be brought by some member who is actually engaged in manufacturing or selling on his own account, or whether any member who is actually engaged at his trade of making cigars, and is, or is liable to be, specially injured by the use of the false label, may maintain his action in equity, although it is difficult to perceive why the latter is not upon principle the proper view of the law.

It being now established that the members of this union have in this label a right which in equity the law will pro-tect against frauds and counterfeiters, our next duty is to inquire whether or not this label comes within the protective power of the criminal laws of our State.

It is to be remembered that there are many legal and equitable rights which are not protected by our criminal laws. In order that one who violates the rights of another

may be adjudged a criminal there must be some statutory enactment which clearly declares such violation to be a crime.

It is claimed by the representatives of the State that this label comes within the terms of the law passed in 1891 (acts of 1891, p. 317), the first section of which reads as follows:

" That any firm, person, corporation or voluntary association that are citizens of the State of Indiana, except foreign corporations, and who are entitled to the exclusive use of any lawful trade-mark, label, brand, stamp or wrapper, may obtain protection for such lawful trade-mark, label, brand, stamp or wrapper by complying with the following requirements:  First, by causing to be filed with the Secretary of State a statement specifying the names of the parties, and the residences and places of business, who desire the protection of the trade-mark, label, brand, stamp or wrapper, the class of merchandise and the particular description of goods comprised in such class, by which the trade-mark, label, brand, stamp or wrapper has been, or is intended to be protected.   A description of trade-mark, label, brand, stamp or wrapper, with *fac-simile* thereof, showing the mode in which it has been and is intended to be applied and used, and the length of time, if any, during which the trade-mark, label, brand, stamp or wrapper has been in use.   Second, by making a payment of a fee of two dollars to the Secretary of State, whose duty it will be to file and record said statement in a book kept for the purpose, to be procured by him as other books in his office of like nature are procured."

By subsequent sections it is made a crime for any one to sell or have in his possession any goods upon which he knows there is affixed any false or forged trade-mark, label, etc., which has been so registered.

Upon the filing of a statement containing the requirements of the statute, together with a proper affidavit and

the fee, the Secretary of State is required to register the trade-mark, label, etc.

· The label under consideration was registered under this law; but, before a criminal action can be maintained under this statute, it must appear in the indictment that the label was such an one. as was entitled to registration. The admission of it to registration by the Secretary of State upon a mere *ex parte* showing does not conclusively determine that question. *United States* v. *Braun,* 39 Fed. Rep. 775.

Assuming this to be the rule, the prosecutor, in preparing the indictment, endeavors to set out such a state of facts as shows that the label does come within the purview of this statute. Some objections are made to the technical sufficiency of these allegations, but we pass from them to the prime question.

The statute expressly limits the right of registration to citizens of Indiana, and further expressly requires that the persons or class of persons—to give the phraseology used, the interpretation most favorable to the union—shall not only be citizens of Indiana, but shall also be entitled to the exclusive use of the label. Are these members of this union, who are citizens of Indiana, by whom or on whose behalf this registration was procured, shown to be entitled to the *exclusive* use of this label? It is endeavored to found an affirmative answer to this question upon the principle that while the general statement of the books is that to constitute a trade-mark, the right to its use must be exclusive, still there are various cases in equity holding that one who is lawfully, but not exclusively, entitled to the use of a trade-mark, is permitted to obtain relief against one who has no right to its use. One case referred to is where action was brought and sustained against a wrong-doer by one of three children who had inherited the trade-mark from their father, and by mutual agreement each continued to use it. Pratt's Appeal, 117 Pa. St. 401. Another

instance is where a firm had been dissolved, each member being held entitled to the use of the trade-mark.

These cases merely prove that the general statement of the law, as usually laid down, is not strictly and absolutely accurate, being simply a general statement subject to some exceptions arising from the peculiarities of individual cases.

In the case of *People* v. *Fisher, supra,* an examination of the statute, section 364, N. Y. Penal Code, will disclose that it contains no such requirement of an exclusive right in citizens of that State as in our own laid down.

It is the well known province of equity to give relief in proper cases by supporting exceptions to general rules. Equity may well be justified, in the instances above referred to, in saying that it does not lie in the mouth of the wrong-doer, who is himself without any right, to question the exclusiveness of his opponent's title, who is clothed with a legal right. A far different question, however, arises when we are asked to construe away a requirement deliberately expressed by the Legislature in a penal statute. Judge Worden says: "A criminal statute will not be extended by construction beyond what its terms fairly import." *Sumner* v. *State,* 74 Ind. 52.

The rule is thus expressed by Judge Elliott: "It is settled law that a penal statute must be strictly construed, and we are, therefore, required to confine the operation of the statute to the cases which it specifies, for we can not extend it by construction.'' *Western Union Tel. Co.* v. *Steele,* 108 Ind. 163.

Such being the well established rule, we can not, by fine spun and nice distinctions, extend this statute beyond its plain import.

As defined by the Century Dictionary, the word "exclusive," when applied to a right, means "undivided," "sole." Giving then to the words their ordinary, every-day meaning, can it be said that these Indiana members of this

union are either singly or collectively entitled to the *exclusive* use of a label which, it ·appears, many others are entitled to use equally with themselves?

The Indiana members are'not even entitled to the exclusive use of this label on cigars sold in Indiana, because it may be placed on union made cigars by others outside the State and the cigars brought within the State for sale.

We are unable to see how it can be successfully maintained that a right belongs exclusively or solely to the Indiana members when the same right is shared by all the members outside of the State.

It seems to us apparent that this label is not included within the terms of this statute.

We are supported in this view by an examination of other sections of the statute, whose provisions are plainly inconsistent with the idea that such a label thus held was intended to be included.

Section 1 requires the names and residences and places of business of the parties claiming the label to be given. This would be manifestly impracticable with this union with its various local branches, and with new branches and new members coming in from time to time.

Section 4 provides that "such trade-mark, label, etc., may be sold or assigned and passed to personal representatives by will, or become assets of an estate," and that in case of change of ownership a statement of such change must be filed with the secretary. Such provisions are wholly unsuited and inapplicable to this union label.

The construction urged by appellant would give no force whatever to the word "exclusive." If the Legislature intended nothing by it, it would have been easy to have left it out.

We are also supported in our construction of this statute, by the course of recent legislation in the various States.

The moral and equitable right of such a union to such

protection as is here claimed seems to have been very generally conceded, and in recognition of this right laws have been passed in numerous States to accomplish the result. In these States the law has been made clear and plain, as could easily have been done here, and "the trade-marks or labels adopted by associations or unions of workingmen" are *eo nomine* given express protection.    See various statutes:    Maryland, acts of 1892, p. 500; South Dakota, acts of 1890, p. 321; Illinois, acts of 1891, p. 202; Maine, acts of 1891, p. 124; Nebraska, acts of 1891, p. 214; Wisconsin, acts of 1891, p. 353; Ohio, acts of 1890, p. 141, by civil remedy only; Massachusetts, acts of 1890, p. 89; Michigan, acts of 1891, p. 39; Kansas, acts of 1891, p. 363.

It is neither the duty nor the province of courts to make laws.    Our duty is best performed by enforcing them according to their plain and evident meaning, and, if, when thus construed, additional laws are required to meet the exigencies of any particular case heretofore unprovided for, the remedy rests with the supreme legislative body of the State, and not with the judiciary.

The judgment is affirmed.

Filed January 31, 1893.