PEOPLE'S OUTFITTING CO. *v.* PEOPLE'S OUTLET CO.

TRADE MARKS AND TRADE NAMES—UNFAIR COMPETITION—NAMES.
   Upon demurrer to a bill of complaint alleging that defendant, the People's Outlet Company, became incorporated after complainant had established a general merchandise business, and had expended large sums in securing a good will, that by reason of the similarity of names, confusion resulted, and that complainant's name the People's Outfitting Comany had become a valuable right, that complainant had frequently requested defendant to adopt some other name, but the request was refused, coupled with a prayer for an injunction and for general relief, the averments of the bill stated grounds for equitable interference.

Appeal from Wayne; Donovan, J. Submitted April 2, 1912. (Docket No 3.) Decided May 31, 1912.

Bill by the People's Outfitting Company against the People's Outlet Company for an injunction to restrain the use of defendant's corporate name. From an order overruling a demurrer to complainant's bill, defendant appeals. Affirmed.

*Lucking, Emmons & Helfman,* for complainant.

*Bernard Goldman (Leo M. Butzel,* of counsel), for defendant.

MOORE, C. J. The defendant interposed a demurrer to the complainant's bill of complaint. From a decree overruling the demurrer, the defendant has brought the case here by appeal.

We quote from the bill of complaint as follows:

"(1) That your orator is a Michigan corporation duly organized under the laws of the State of Michigan and pursuant to Act No. 232 of the Michigan Public Acts of 1885 and the laws amendatory thereto. That your orator was incorporated in August, 1893, ' to sell and deal in at wholesale and retail house furnishing goods and general merchandise;' that continuously since said time your orator has been engaged in said business.

"(2) That the said defendant, the People's Outlet Company, was organized under the laws of the State of Michigan and pursuant to Act No. 232 of the Public Acts of 1903 and the laws amendatory thereto; that said defendant was incorporated in July, 1910, 'to buy, sell and deal at wholesale and retail in general merchandise, dry goods, notions, shoes, clothing, and all other goods to such business belonging.'   *   *   *   That since October 1, 1910, the said defendant has been and now is engaged in the retail business at 156 Gratiot avenue, Detroit, Mich., handling, selling, and dealing in clothing, shoes, and ladies' ready-to-wear goods.   *   *   *

"(4) That since its organization your orator has been and now is engaged at Detroit, Mich., in a furniture and house furnishing business; that it deals in furniture, car-

pets, rugs, stoves, jewelry, crockery, draperies, curtains, dry goods, ladies' wearing apparel, and general merchandise; that your orator has for upwards of 15 years last past operated a large retail furniture and house furnishing business in a large five-story building and basement situated on the corner of Rowland street and Michigan Avenue, Detroit, Mich., and that it has also for several years last past operated a large mail order department in said city which is now situated on the West Grand Boulevard in said city of Detroit, and that your orator employs 250 men and women in said city in its retail and mail order business, and receives daily thousands of letters.

"(5) That your orator has spent and is spending many thousands of dollars in advertising its business, and that the name of your orator and the exclusive right to the use thereof has become a valuable property right built up at a large expenditure of money and worth thousands of dollars to your orator.

"(6) That on or about September 1, 1910, your orator learned of the organization of the said defendant company, and anticipating that the similarity of names between your orator and the defendant would lead to uncertainty and confusion in the minds of the public, your orator caused its attorney, Harry Helfman, to call upon the said defendant."

The bill of complaint then recites the efforts made to induce defendant not to use the name taken by it.

"(9) Your orator avers that it refused to pay said sums and protested against the continued use of the name of the said defendant and caused its attorney to notify the said defendant that in due time your orator would file a bill in equity against the said defendant to restrain and prevent the use of the said name.

"(10) Your orator further avers that it contemplates engaging in the clothing business in the near future and instructed its attorney to so inform the defendant, and your orator charges the fact to be that its attorney did so inform the defendant during said negotiations.

"(11) Your orator shows that almost daily since the middle of September, 1910, your orator has been put to considerable trouble, annoyance, uncertainty, and confusion on account of the similarity of said names of your orator and the said defendant, which had arisen in a variety of different ways, viz.:  (a) The various railroads,

express companies, and navigation companies in the city of Detroit have confused the said names of your orator and said defendant. That your orator has been notified repeatedly by said railroad companies to call at their depots in order to take away merchandise alleged to have been consigned to your orator, and your orator would send its drivers to the depots and then learn that the freight in question was consigned to the defendant; that your orator was also notified by the navigation companies to take away freight alleged to have been consigned to it, but upon arrival of your orator's drivers at the wharves or docks, the said drivers would be informed that the said merchandise was intended for the People's Outlet Company; that boxes of shoes, boxes of clothing, etc., have actually been hauled by your orator's drivers to your orator's store before the mistake was discovered; that express companies have made similar mistakes. (*b*) That almost daily your orator receives mail intended for the People's Outlet Company, and only after considerable trouble is the fact discovered that the mail was not intended for your orator; that your orator has received bills from creditors of the said defendant, demands for money, statements of account, bills of lading, notice to make payments, invoices, letters of various characters, which, upon investigation, after considerable trouble, your orator has learned were intended for the said defendant; that said letters would come not only from Detroit, but from New York City and elsewhere; that in view of the large mail order business of your orator, the confusion of mail is a serious matter and works much damage and annoyance to your orator. (*c*) That your orator has been called upon the telephone repeatedly by persons who desire to interview the People's Outlet Company. (*d*) That your orator keeps its bank accounts at the First National Bank in Detroit, Mich., and the said defendant likewise keeps an account at said bank; that on one occasion your orator was notified by the said bank to pay a note alleged to be due from your orator to the said bank, and after considerable inquiry and correspondence it was discovered that the said obligation was due from the said defendant to the said bank and not from your orator.

"(12) Your orator says that it did not file this bill of complaint before this date because your orator was advised by its solicitors to await a reasonable length of time

until it could be demonstrated by actual experience whether or not the names of your orator and said defendant were so similar as to result in confusion and uncertainty, and for that reason only has your orator waited until this time, and that in the meantime your orator has protested to the attorney for said defendant against the use of the said name and has told the said attorney that in due season your orator would file this bill.

"(13) That your orator is without adequate remedy at law and must forever lose its just claim and suffer great and irreparable damages to the extent of, to wit, thousands of dollars, unless relieved by a court of equity.

"Your orator therefore prays: (a) That the defendant, the People's Outlet Company, appear and answer this bill of complaint, but not under oath; answer under oath being hereby expressly waived. (b) That the said People's Outlet Company be restrained by an order of this court, and that a temporary and permanent injunction be issued herein, restraining the said defendant, its officers, agents, and employés, from using the name 'People's Outlet Company,' until the further order of this court. (c) That your orator may have such other and further relief as to the court shall seem meet and agreeable to equity."

The material parts of the demurrer are as follows:

"(1) Because under the facts and averments set forth in complainant's bill, the defendant, People's Outlet Company, is legally and equitably entitled to the use of its corporate name, to wit, 'People's Outlet Company.'

"(2) Because the word 'People's,' used in connection with the corporate name of defendant, People's Outlet Company, is such a general term of description as not to entitle the complainant to the monopolization thereof.

"(3) Because the said bill does not show that the complainant has any interest in the subject-matter thereof.

"(4) Because by the averments of the bill, the parties not being engaged in competing business, the complainant is entitled to no relief.

"(5) Because the word 'People's' is part of the English language, and complainant has no capacity to appropriate its use to the exclusion of any other portion of the public, natural or corporate.

"(6) Because the complainant has at best only a theo-

retical right to prevent defendant from using the name adopted by it, in case of unfair trade practices, and the bill does not so claim or allege, and in fact disproves such existing claims."

It is not necessary to cite any authorities upon the proposition that the demurrer admits the truth of the averments in the bill of complaint. A reference to these averments shows that reasons 3 and 4 are not well taken. The other reasons may be considered together. Counsel say:

"That the word 'People's' used in connection with and as a part of the corporate name of defendant is a generic term, and is not subject to monopolization by complainant. * * * That the bill does not allege unfair trade practices, and in fact by implication refutes any such claim. * * * The tests applied by all the authorities in this class of cases are: Is the corporate, or trade, or fictitious name simulated? Is the name assumed or adopted false in fact? Is it used in connection with locality or other representations so as to convey the impression that the business is the continuation of an old business, or the business of complainant?"

The complainant is not complaining simply because of the use of the word "People's" and "Company," but it is complaining of the use of those words as arranged in the name of the defendant corporation, claiming the result is so similar to the name of the complainant as to be misleading in fact, in the actual business life of the complainant.

The solicitors for defendant, in support of their contention which we have already quoted, cite many cases which relate simply to trade-marks, and which we think do not apply to the instant case. They cite and rely upon the following Michigan cases: *Williams* v. *Farrand*, 88 Mich. 473 (50 N. W. 446, 14 L. R. A. 161); *Supreme Lodge K. of P.* v. *Improved Order K. of P.*, 113 Mich. 133 (71 N. W. 470, 38 L. R. A. 658); *Michigan Sav. Bank* v. *Dime Sav. Bank*, 162 Mich. 297 (127 N. W. 364, 139 Am. St. Rep. 558).

The first named of these cases does not deal with a dispute between corporations, but with one between partners, some of whom bought out the others; the retiring copartners having organized a new business. In the case in 113 Mich. *supra*, this court adopted as its own the opinion of Judge CARPENTER, in which opinion he used the following language:

"The correct principle is stated in complainant's brief (page 71) as a quotation from the opinion of Judge Foster, of the superior court of Vanderburgh county, Indiana, rendered in the suit of *St. George Lodge, K. of. P.,* v. *Rosenthal, et al.*:

"'Where a corporation has appropriated and used a name for such length of time as to become identified by the name, and has established a character and reputation under it, it is a fraud upon the corporation and the public if this name be assumed by others under such circumstances as would lead the public to believe that they constitute the original corporation, and, where injury will result to the corporation on account thereof, courts of equity will, at the suit of the injured parties, by injunction, restrain the further perpetration of the wrong. It is the special injury to the party aggrieved and the imposition upon the public that constitute the wrong which the courts will redress. It is not necessary that the wrong should be intentionally committed. It is enough that the name should be used under such circumstances as would lead the public to believe that the latter organization was the former, and thereby cause injury to the former corporation.'

"Where one uses the name of another for the fraudulent purpose of attracting to himself business which belongs to that other, no injustice will be done if the court assumes that the name chosen accomplishes this purpose, even though the resemblance be not great. If one intends that the name he has chosen shall be believed to be that of another, it is fair to infer that he will so use that name as to promote the desired belief. Accordingly, we find that the motives with which a name is chosen, and the circumstances attending its use, as well as the similarity of names, have a bearing in determining whether business is liable to be diverted, and consequently whether the courts shall interfere."

In *Michigan Sav. Bank* v. *Dime Sav. Bank, supra,*

Justice OSTRANDER, speaking for the court, among other things, said:

"So Act No. 232, Pub. Acts 1903, in section 2 thereof, relating to names to be assumed by corporations, contains the proviso that—

" 'No name shall be assumed already in use by any other existing corporation of this State, or corporation lawfully carrying on business in this State, or so nearly similar as to lead to uncertainty or confusion.'

"Courts of equity are frequently called upon to remedy the conditions which grow out of the use by a corporation of a name similar to the name of another corporation, carrying on a business of the same character. In such cases it is usually, if not always, true that relief is granted because experience has demonstrated that the public is misled, and the corporation first established is defrauded on account of the similarity of the names. We assume that the statutes referred to were intended to prevent, to some extent, the conditions which in such cases, when they arise, make a resort to the courts necessary. In this view of the legislation, in its enforcement by the courts as a preventive measure, it is necessary to consider, in advance of a demonstration based upon experience, and in a case where neither corporation has, or can acquire, the general right to an exclusive use of the words employed in the name, whether it is likely that the public will be misled, and whether the complaining corporation is likely to be injured. It is evident that experience, not in the particular case, but in other cases, must still be employed in determining the fact, and that mere conjecture that some confusion may result is not ground for granting equitable relief. We may also consider that if relief is refused and conjecture is in actual experience made fact, the complaining corporation may have its remedy."

In *Lamb Knit-Goods Co.* v. *Glove & Mitten Co.*, 120 Mich. 159 (78 N. W. 1072, 44 L. R. A. 841), Justice MONTGOMERY said, among other things:

"In the present case the testimony shows that dealers have been misled, and in view of the fact that the complainant's business is largely the manufacture of gloves and mittens, and that the name 'Lamb' is prominent in the corporate name, we think it is likely to mislead. The

case is very similar to *Charles S. Higgins Co.* v. *Higgins Soap Co.*, 144 N. Y. 462 ([39 N. E. 490, 27 L. R. A. 42] 43 Am. St. Rep. 769). In that case the complainant's name did not describe its business. The business was, in fact, the manufacture and sale of soap. The court restrained the defendant from carrying on the business in the name of Higgins Soap Company. The court held that, even if the name was assumed in good faith, without design to mislead the public and acquire the complainant's trade, the defendant, knowing the facts, must be held to the same responsibility. See, also, *Holmes, Booth & Haydens* v. *Holmes, Booth & Atwood Manfg. Co.*, 37 Conn. 278 (9 Am. Rep. 324); *Myers* v. *Buggy Co.*, 54 Mich. 215 ([19 N. W. 961, 20 N. W. 545] 52 Am. Rep. 811); *Frazer* v. *Lubricator Co.*, 121 Ill. 147 ([13 N. E. 639] 2 Am. St. Rep. 73); *Pillsbury* v. *Flour Mills Co.*, 12 C. C. A. 432, 64 Fed. 841; *Walter Baker & Co.* v. *Baker* [C. C.], 87 Fed. 209."

Applying these principles of law to the case stated by the bill of complaint and admitted to be true by the demurrer, we think the complainant has stated a case for relief. See, also, *Finney's Orchestra* v. *Finney's Famous Orchestra*, 161 Mich. 289 (126 N. W. 198, 28 L. R. A. [N. S.] 458.

The decree of the court below is affirmed, with costs. Defendant is given 20 days in which to answer.

Steere, McAlvay, Brooke, Blair, Stone, and Ostrander, JJ., concurred. Bird, J., did not sit.