DAYTON *v.* IMPERIAL SALES & PARTS CO.

1. TRADE NAMES—WORDS AND PHRASES—NAMES.

The word "Imperial," considered by itself, is a generic word, adjective in its nature, most commonly used as signifying imposing size, appearance or excellence, and primarily free to the use of all for whatever it may imply.

2. SAME—NAMES — IMITATION OF NAME — UNFAIR COMPETITION — GOOD FAITH—INJUNCTION.

While any persons may legally engage in the business of repairing and supplying new parts of automobiles and may specialize in a particular make or model and so advertise, they may not, under an imitative, assumed name, benefit themselves to the injury of a rival to whom the imitated name belongs, and it is unnecessary to wait until a name that tends to breed confusion and mislead the public and likely to be used to that end is actually used in the business before seeking injunctive relief, and it is immaterial that the name is assumed in good faith.

3. SAME—EXCLUSIVE RIGHT TO USE OF NAME.

Even though neither a copartnership organized for the purpose of engaging in the sale of automobile parts, after purchase of the right to use the words of the trade-name from an insolvent corporation engaged in the sale of automobile parts, nor a corporation formed to engage in a similar business, can acquire the exclusive use to the words, the copartnership purchasing the right to use such words could, by first adopting and appropriating as its trade-name a special or distinctive arrangement and combination of those words, acquire an exclusive right to the name so formulated.

4. SAME—IMITATION OF NAME—UNFAIR COMPETITION—INJUNCTION.

Where one corporation unlawfully imitates the trade-name of another corporation, the use of such imitating name should be enjoined, instead of allowing the use of the offending name with a disclaimer.

Appeal from Jackson; Wiest, J., presiding. Submitted October 12, 1916. (Docket No. 143.) Decided March 30, 1917.

Bill by Edwin J. Dayton and Winfield S. Grant, copartners as Imperial Automobile Parts Company, and another, against the Imperial Sales & Parts Company and others for an injunction restraining defendants from using the name "Imperial" in carrying on their business, and other relief. From a decree for defendants, plaintiffs appeal. Modified and affirmed.

*Harry C. Howard,* for appellants.

*Wilson & Cobb,* for appellees.

STEERE, J. This injunction bill was filed by the Imperial Automobile Parts Company of Jackson, Mich. "(and the Standard Motor Parts Company joined as coplaintiffs herein)," to restrain the Imperial Sales & Parts Company, of Jackson, from resorting to unfair competition in trade by soliciting, advertising, and doing business in Imperial automobile repair parts under its present name, which is charged to have been assumed in close imitation of that of the Jackson plaintiff with a design to deceive and mislead prospective customers of the latter to patronize defendants' company unwittingly.

The Imperial Automobile Company, a corporation formerly established in the city of Jackson, Mich., became financially embarrassed after manufacturing several thousand of its automobiles and went out of business. Its affairs were wound up at the instance of creditors and its assets disposed of. When in active operation it ran in connection with, and auxiliary to, its manufacturing business a repair parts department, or business, equipped with appliances and material adapted to such use. In the process of liquidation this was separately advertised for sale on October 2, 1915, as the "Repair Parts Business" of the Imperial Automobile Company. On October 15, 1915, the Standard Motor Parts Company of Detroit, Mich., bought the

same for $38,000. The purchase included all machinery of the Imperial Automobile Company not then under lease, office furniture, material, parts, etc., too numerous to mention—included the name "Imperial, and all mail rights connected with it," but excluded "car manufacturing rights." When the purchase was made, the Imperial Automobile Company, or those in charge of its assets, still continued the repair parts business, although the manufacture of Imperial automobiles was a thing of the past.

Plaintiffs Dayton and Grant, who were interested in the Detroit parts company, almost immediately took over the Jackson purchase under some arrangement not disclosed in detail, and, thus equipped, proceeded to organize a copartnership and run a repair parts business at the Imperial Automobile Company's former plant in Jackson under the name "Imperial Automobile Parts Company," properly qualifying to do business under such assumed name by filing the requisite record of organization with the clerk of Jackson county, showing names and addresses of the partners, etc. Letters and trade circulars were sent out by them under that name as early as November 1, 1915.

Defendants Redfield and James Beadle were old employees of the Imperial Automobile Company and were employed for a time by plaintiffs—Beadle about six weeks and Redfield near two months. In the latter part of December, while yet in plaintiff's employ, they planned and arranged to organize a corporation for the purpose of engaging in the same line of business under the name "Imperial Sales & Parts Company." Defendant Haehnle, a brewer of Jackson who furnished the financial backing, testified that he first proposed the project and subsequently indorsed the note of Karlene Beadle for her stock; her name being put in the articles of incorporation at suggestion of James Beadle, her father. The incorporators

of record consisted of defendants Haehnle, Redfield, and Karlene Beadle. James Beadle took no stock in his own name, but was made general manager. Just when they perfected the organization is not clear, but Redfield testified:

"I think the Imperial Sales & Parts Company did the first business on New Year's Day."

Redfield was the bookkeeper of the Imperial automobile company and continued as such during its period of liquidation, and while working for plaintiffs was also in his former employment in that capacity, each company paying one-half of his salary. While also in plaintiffs' employ, he had access to their books and records. Beadle had been purchasing agent for the Imperial Automobile Company, which made an assembled car. While in plaintiffs' employ he got up schedules and lists for them of the different material and parts purchased or manufactured by the old company for use in its different models and of the names of persons he knew were owners of cars, giving directions to girls doing the clerical work as to how to get the names from the books and put them on cards. It is charged by plaintiffs that these two defendants took lists and obtained special information as to customers of plaintiffs and persons owning Imperial automobiles, by reason of their employment. Those defendants absolutely deny this, asserting they took away no memoranda and availed themselves of no information derived from their employment with plaintiffs.

Defendant De Lamater, who was president of the Imperial Automobile Company for some time and officially connected with a bank in Jackson, was charged with being interested in the defendant Imperial Sales & Parts Company and conspiring to furnish his codefendants with information relative to plaintiffs' business. This he denied under oath, asserting he had no interest in the defendant company, and explained

clearly the scant circumstances from which the charge was claimed to be inferable. We agree with the trial court that plaintiffs wholly failed in establishing any legal culpability as to him.

Plaintiffs filed their bill on January 18, 1916, obtaining an order to show cause why an interlocutory injunction should not issue, and restraining defend-. ants, interim, from using the name "Imperial," advertising or in any manner conducting the business under the name complained of. Defendants filed an answer on January 24, 1916, at the same time moving that the restraining order be vacated, which motion was granted, as it appeared to the court from defendants' answer that they proposed to carry on business in such a manner as not to mislead or confuse, and to state in their advertising matter that they were in no way connected with the Imperial Automobile Company or with plaintiffs.

Defendants testified at the hearing, and there was no proof to the contrary, that prior to January 18th they had done no general business, printed no stationery, nor circulated any advertising literature, and showed that thereafter they printed upon their corporate stationery, in the upper left-hand corner, in red, the statement, "This company is in no way connected with the Imperial Automobile Parts Company," and upon the only circular letter which they sent out:

"Let us mention one fact: That we are not connected in any way with the Imperial Automobile Company, which has discontinued the manufacture of automobiles, the Standard Motor Parts Company, the Imperial Automobile Parts Company or any other person, firm or corporation."

It is not unreasonable to surmise that the injunction suit quickened them to adopt this disclaimer, and we do not disagree with the expressed view of the trial court that:

195 Mich.—26.

"It is not necessary to find that defendants in selecting a name for the corporation so similar to that of plaintiffs' company deliberately planned on confusion of names as an asset, although the evidence leads dangerously close to such a conclusion."

The court decided, however, that, analogous to the rule stated in *Allegretti Chocolate Cream Co.* v. *Keller,* 85 Fed. 643, if this disclaimer was perpetuated and emphasized by carrying with defendants' corporate name so near to it as to challenge attention whenever and wherever used in trade, the statement that it was in no way connected with the Imperial Automobile Parts Company, it would serve the purpose of ample warning against confusion, and granted the injunction asked for unless this was done, with costs.

Appellants complain that the trial court, after having substantially agreed with their contention and stated in substance that defendants only adopted the disclaimer "to save the day in a lawsuit," and that plaintiffs were entitled to relief, failed to grant any adequate relief; while defendants cry out against impugning their motives and sincerity of purpose, in going "further than other courts have gone in cases involving similar facts" by compelling them to carry and advertise the name of their rival upon their stationery and advertising matter in close connection with their own.

It is evident that "Imperial," considered by itself, is a generic word, adjective in its nature, most commonly used as signifying imposing size, appearance, or excellence, primarily free to the use of all for whatever it may imply, and counsel for plaintiffs state that they are not complaining of the unlawful use of it as a trade-mark, but of unfair competition in trade, resulting from its imitative use in name-combination and the disloyalty of employees. The latter grievance, though charged in the bill, is but incidentally involved and scarcely a matter for injunctive relief. The

scheme of the bill is purely unfair competition in trade arising through the adoption by defendants of not only the word "Imperial," which through its previous adoption, and adaptation by plaintiffs' grantor to a named article of its manufacture was used with an expansive meaning, but particularly, and in that connection, to the assumption of a trade-name closely imitating that of plaintiffs, leading to confusion and tending, because of its similarity, to be taken by the public for that of plaintiffs. Of this the learned circuit judge said in his opinion:

"The word 'Imperial' standing alone may imply no more than superiority, but in the case at bar the word as used by the plaintiffs in their assumed business name and the defendant corporation in its business name was clearly intended and used in its expansive and earned business sense, and as such it must be held to extend in its meaning and to stand in the trade as relating to a particular make of automobile known by that name, and for which the parties hereto were prepared to supply parts.

"The word 'Imperial" had acquired a trade significance and served to identify the business of plaintiffs with a particular make of automobile, and was therefore of value in trade solicitation and as a means of directing attention to plaintiffs' company.

"Plaintiffs, recognizing this trade value of the word, employed it in assuming their business name. Defendants, also recognizing the trade value of the name 'Imperial' and knowing that plaintiffs had assumed it in their trade-name, employed the word in naming their corporation.

"The word 'Imperial' had acquired a secondary meaning in the automobile parts business, and the name Imperial Sales & Parts Company was selected by defendants for this reason. There is a misleading and studied similarity between the names Imperial Automobile Parts Company and Imperial Sales & Parts Company, well calculated to confuse the public into mistaking one for the other. The same purpose actuated both plaintiffs and defendants in selecting their trade-names, but with plaintiffs the field of selection

was open, while in the case of defendants fair dealing demanded that they steer clear of taking a name so similar to that of plaintiffs that it would be well calculated to lead the public into the mistaken belief that in buying parts of the corporation they are dealing with plaintiffs."

Unquestionably defendants or any one else may legally engage in the business of repairing and supplying new parts to old automobiles as freely as they can go into the grocery business. It is also true that there is no law against their specializing in any particular make or model and so advertising, but they may not under an imitative, assumed name benefit themselves to the injury of a rival to whom the imitated name belongs, and it is not necessary to wait until a name that tends to breed confusion and mislead the public, likely to be used to that end, is actually used in the business of a defendant. Nims on Unfair Competition & Trade-marks, § 226. Even if the name was assumed in good faith without any intention to mislead the public and unfairly interfere with plaintiffs' trade, the defendants, having knowledge of all the facts, are held to the same responsibility. *Charles S. Higgins Co.* v. *Soap Co.*, 144 N. Y. 462 (39 N. E. 490, 27 L. R. A. 42, 43 Am. St. Rep. 769). In this case defendants certainly had full knowledge of the facts.

The claim of defendants that plaintiffs were, like themselves, beginners and not long enough in the business to have acquired any good will, is not tenable. They not only obtained an established and going business, including all good will, mail rights, stock, equipment, organization, etc., in its repair parts business which the Imperial Automobile Company had built up and could convey, but with that start had been doing business under their partnership name, making lists of owners of Imperial cars, sending them circulars advising of the continuation of the business under the changed ownership and name, from October

until this bill was filed on January 18th. In selecting a trade-name for that particular business they naturally recognized the importance of "Imperial" as a master word in advertising value and placed it at the head when devising their trade-name. When later defendants adopted a trade-name, they not only did the same thing, but used the same words in the same order, except that they substituted "Sales &" for "Automobile" in the center of the name. Granting that neither party can acquire exclusive use of any one of the words employed in plaintiffs' trade-name, they could, by first adopting and appropriating as their trade-name a special or distinctive arrangement and combination of those words, acquire an exclusive right to the name so formulated. A misleading simulation of the name as an entirety, not the use of a particular word, is the gist of the wrong complained of by plaintiffs.

We think the conclusion of the trial court that the circumstances disclosed in this record entitled plaintiffs to relief is fully in harmony with well-established rules, and find direct support in *People's Outfitting Co. v. Outlet Co.*, 170 Mich. 398 (136 N. W. 599), and authorities there cited; but we are unable to conclude that the permitted use of the offending name with a disclaimer affords appropriate or full relief in a case of this kind, where the defendant is doing business under a purely assumed trade-name and is found to have unlawfully imitated that of plaintiffs.

The *Allegretti Case,* which was approved and followed by the trial court in granting relief here, involved an unfair use of his own name by a defendant. Having there found that the "younger Allegretti had endeavored to create a confusion as to the identity of the chocolate creams manufactured by himself and by the complainant respectively," the court referred to the case of *Baker* v. *Sanders,* 80 Fed. 889 (26 C.

C. A. 220), as containing a "convenient rule applicable to cases of this kind," and said "such rule may be followed here." In the *Baker Case,* a suit was brought by the proprietors of the original "Baker's Chocolate" Company to restrain one W. H. Baker from using his own name in the manufacture and sale of chocolate in such manner as to unfairly benefit by the reputation of complainant's commodity. Of the situation thus presented, the court said:

"The complainant is entitled to relief against further use of a title which causes confusion, provided such relief can be granted without depriving W. H. Baker of the right to use his own name in connection with the chocolate business.   *   *   *

"'The doctrine is equally well settled that equity will direct how a man shall use his name in his purpose to denote his own individuality. He will not be allowed to so use his own name as to work an injury to another having the same name, nor to perpetrate a fraud upon the public.'"

To meet such a situation, the rule referred to was formulated so as to grant complainant relief without depriving defendant of his inherent right to use his own name in connection with the chocolate business. No question of any defendant's own name arises here.

The generally recognized and customarily granted relief in cases of this kind, and that to which plaintiffs are reasonably entitled where the offense is established, is restraint from further use of the imitating name. Plaintiffs are entitled to such relief.

The decree of the court below will be modified accordingly, and, so modified, stand affirmed, with costs in this court to plaintiffs.

KUHN, C. J., and STONE, OSTRANDER, BIRD, MOORE, and BROOKE, JJ., concurred. PERSON, J., did not sit.