YOUNG & CHAFFEE FURNITURE CO. *v.* CHAFFEE
BROTHERS FURNITURE CO.

1. TRADE-NAMES—SIMILARITY OF NAMES—CONFUSION—STATUTES—
INJUNCTION.

The names "Chaffee Brothers Furniture Company" and
"Young & Chaffee Furniture Company" are not so nearly
similar as to be liable to cause uncertainty and confusion
to arise in violation of section 9018, 2 Comp. Laws 1915,
and a court of equity should not issue the stringent writ
of injunction upon the bare possibility of confusion by the
careless and indifferent reader.

2. SAME—INCORPORATION—SECRETARY OF STATE.

The question as to whether confusion would arise is one for
determination in the first instance by the secretary of
State, although his determination is not final.

3. SAME—MONOPOLIES—UNFAIR COMPETITION—EQUITY.

The law does not favor monopolies, and honest competition
should not be stifled or prevented; it is unfair competition
which courts of equity prevent by injunction.

4. SAME—RIGHT TO USE FAMILY NAME—DECEPTION OF PUBLIC—
ESTOPPEL.

Generally speaking, one has the right to use his own name
in his business; but he may not use it in such a way as
to lead the public to believe that they are dealing with
another, or that his wares are the wares of another; and
he may dispose of the right to use his name in connection
with a certain business so as to be estopped from claiming
the right to its use in that business.

5. SAME—SALE OF BUSINESS—ESTOPPEL.

Where one brother owned stock in plaintiff corporation, en-
gaged in the furniture business, and two other brothers
were employees of plaintiff, sale of said stock without
any covenant not to use family name, *held*, not to estop
them from using their own name in the furniture busi-
ness in such way as not to mislead the public.

6. SAME—MASTER AND SERVANT—EMPLOYEES' REPUTATION, RIGHT
TO BENEFIT OF.

While defendants were in the employ of plaintiff it was

entitled to the benefit of their experience and reputation for honesty and integrity, but when they left its employ such right ceased.

7. SAME—CONFUSION—UNFAIR COMPETITION—EVIDENCE.

Evidence *held*, not to establish that defendants have so used their family name in the name of defendant corporation as to lead a person of ordinary intelligence to believe that he was dealing with plaintiff corporation, or as to exceed the boundaries of fair competition.

Appeal from Kent; Perkins, J. Submitted October 11, 1918. (Docket No. 42.) Decided December 27, 1918.

Bill by the Young & Chaffee Furniture Company against Chaffee Brothers Furniture Company and others to restrain the use of a trade-name. From a decree dismissing the bill, plaintiff appeals. Affirmed.

*H. Monroe Dunham,* for plaintiff.

*Stuart E. Knappen* and *Wykes & Averill,* for defendants.

FELLOWS, J. In 1896, Robinson J. Young and Guy W. Chaffee formed a copartnership under the firm name of Young & Chaffee Furniture Company, for the purpose of conducting a retail furniture business on Ottawa street in the city of Grand Rapids. The business seems to have quite largely consisted in the sale of furniture and house furnishings on the installment plan, and to have been successful. Defendants, Glenn D., Owen R., and Burt K. Chaffee, were brothers of Guy W. Glenn D. commenced to work for the firm about 1898 or 1899, and Owen R. and Burt K. about 1901 or 1902. None of them had to do with the management of the affairs of the partnership or the succeeding corporation later organized, except that upon the death of Guy W., about August 1, 1913, Burt K. became manager for the balance of the year. Owen

R. left the employ of the concern about 1908 and went to Oregon. On September 22, 1909, the present plaintiff was organized as a corporation under the laws of this State with $280,000 capital stock, divided into 1,800 shares of common stock and 1,000 shares of preferred, each of the par value of $100. The corporation succeeded to and took over the business of the old firm. Defendant Glenn D. Chaffee owned no stock in the corporation. Defendant Burt K. Chaffee actually owned no stock in the corporation, although 10 shares owned by his brother, Owen R., was at one time placed in his name. Defendant Owen R. Chaffee owned 71 shares of common stock and 20 shares of preferred; at one time he was elected a director of the company, but by reason of his absence in Oregon did not attend meetings.

The record fairly discloses that during the lifetime of Guy W. Chaffee he was the dominant factor in the business, and that after his death others interested in the corporation assumed its control. A few months after his death the services of Glenn D. and Burt K. were dispensed with. In January, 1914, defendants Owen R. and Burt K. Chaffee formed a copartnership under the firm name of Chaffee Brothers Furniture Company, and opened up a retail store on Division street, where they engaged in business similar to that conducted by plaintiff on Ottawa street. They had but a small amount of ready money, but it seems to be admitted on all hands that they had a reputation for honesty and probity in Grand Rapids and vicinity which aided in their venture. Their business also was a success. In July, Owen R. sold his stock in plaintiff company, and the following fall, defendant Chaffee Brothers Furniture Company was organized as a corporation under the laws of this State, with $15,000 common and $10,000 preferred stock. The common stock and $3,000 of the preferred was issued in equal

shares to defendants Owen R. Chaffee, Burt K. Chaffee, and Arnold G. Lockerby.

In the fall of 1915 defendant Young became interested in defendant company. It is to be inferred that he bought some of the preferred stock. Mr. Young sold his stock in the plaintiff company to the controlling interest; the exact date of the sale does not appear but it is to be inferred that it was after he made his investment in defendant company and the following spring. He does not appear to have been active in the plaintiff corporation, and there is no substantive proof that he was or is active in defendant corporation.

This bill was filed May 18, 1916, and seeks to restrain defendants from the use of the words "Chaffee Brothers" as a part of the corporate name, and from advertising or doing business under a name containing such words, or other words which are likely to lead the public to believe that it is dealing with plaintiff. From a decree dismissing the bill plaintiff appeals. seeking a reversal on the following grounds:

"*First.* Because of the statute of the State of Michigan, the same being section 9018 of the Compiled Laws of Michigan 1915, which provides as follows:

"'The name assumed and by which the corporation shall be known in law; *provided,* No name shall be assumed already in use by any other existing corporation of this State, or corporation lawfully carrying on business in this State or so nearly similar as to lead to uncertainty and confusion.'

"*Second.* Because the defendants have violated the duty to use their name so as not to prevent confusion between their house and goods and the house and goods of the plaintiff in the same business.

"*Third.* Because of the similarity of names, defendant's use of its corporate name is causing unfair competition as against the plaintiff."

A comparison of the names of these two corporations does not persuade us that from the names alone

uncertainty and confusion is liable to arise. We think the person of ordinary intelligence would quite likely assume from the two names that they were not one and the same company. That there might be some confusion to the careless or indifferent reader of them is possible. But a court of equity should not issue its stringent writ of injunction upon such bare possibilities. We are impressed that relief under this statute alone should not be had. *Michigan Savings Bank* v. *Dime Savings Bank,* 162 Mich. 297 (139 Am. St. Rep. 558); *Detroit Savings Bank* v. *Highland Park State Bank of Detroit,* 201 Mich. 601; *Supreme Lodge K. of P.* v. *Improved Order K. of P.,* 113 Mich. 133 (38 L. R. A. 658). The secretary of State evidently was not impressed that confusion would arise; and while his determination is not final it is a question for his determination in the first instance.

The remaining questions may naturally be solved together. The law does not favor monopolies. Honest competition should not be stifled or prevented. It is unfair competition, unfair trade, which courts of equity prevent by injunction. This case must stand or fall upon the question of whether this record makes out a case of unfair trade. It was stated by the master of the rolls in the case of *Croft* v. *Day,* 7 Beav. 84:

"It has been very correctly said, that the principle, in these cases, is this: that no man has a right to sell his own goods as the goods of another. You may express the same principle in a different form, and say that no man has a right to dress himself in colours, or adopt and bear symbols, to which he has no peculiar or exclusive right, and thereby personate another person, for the purpose of inducing the public to suppose, either that he is that other person, or that he is connected with and selling the manufacture of such other person, while he is really selling his own. It is perfectly manifest, that to do these things is to commit a fraud, and a very gross fraud."

One may dispose of the right to use his name in connection with a certain business; he may so circumscribe himself as to be estopped from claiming the right to its use in that business; but generally speaking one has the right to use his own name; he may not use it in such a way as to lead the public to the belief that they are dealing with another, or that his wares are the wares of another; he may not by any artifice so use his name as to deceive the public into the belief that his establishment is the establishment of another, thereby bringing to himself profit not properly appertaining to himself and his business, and thus inflicting damage on his competitor. It was said by Justice Devens, speaking for the court in *Russia Cement Co.* v. *LePage*, 147 Mass. 206 (17 N. E. 304, 9 Am. St. Rep. 685):

"A person cannot make a trade-mark of his own name, and thus debar another having the same name from using it in his business, if he does so honestly, and without any intention to appropriate wrongfully the good-will of a business already established by others of the name. Every one has the absolute right to use his own name honestly in his own business for the purpose of advertising it, even though he may thereby incidentally interfere with and injure the business of another having the same name. In such case the inconvenience or loss to which those having a common right to it are subjected is *damnum absque injuria*. But although he may thus use his name, he cannot resort to any artifice or do any act calculated to mislead the public as to the identity of the business, firm or establishment, or of the article produced by them, and thus produce injury to the other beyond that which results from the similarity of name."

It was said by Lord Esher, master of the rolls, in *Turton* v. *Turton*, L. R. 42 Ch. Div. 128:

"Therefore the proposition goes to this length; that if one man is in business and has so carried on his business that his name has become a value in the market, another man must not use his own name. If that

other man comes and carries on business he must discard his own name and take a false name. The proposition seems to me so monstrous, that the statement of it carries its own refutation."

In *Holmes, Booth & Haydens* v. *Holmes, Booth & Atwood Manfg. Co.*, 37 Conn. 278 (9 Am. Rep. 324), it was tersely stated:

"The ground on which courts of equity afford relief in this class of cases, is the injury to the party aggrieved, and the imposition upon the public by causing them to believe that the goods of one man or firm are the production of another."

The rule was thus broadly stated by Chief Justice Fuller in *Howe Scale Co.* v. *Wyckoff, Seamans & Benedict*, 198 U. S. 118 (25 Sup. Ct. 609):

"We hold that, in the absence of contract, fraud, or estoppel, any man may use his own name, in all legitimate ways, and as the whole or a part of a corporate name."

The following authorities will be found instructive on the subject. *Burgess* v. *Burgess*, 3 De Gex, M. & G. 896; *Meneely* v. *Meneely*, 62 N. Y. 427 (20 Am. Rep. 489); *Walter Baker & Co. Ltd.* v. *Baker*, 87 Fed. 209; *Pillsbury* v. *Flour Mills Co.*, 12 C. C. A. 432, 64 Fed. 841; *Gilman* v. *Hunnewell*, 122 Mass. 139. We forbear further citation of authorities from other jurisdictions. Many of them were collected and discussed in *Williams* v. *Farrand*, 88 Mich. 473 (14 L. R. A. 161), in both the prevailing and dissenting opinions. Justice CHAMPLIN, in his dissenting opinion in that case, expressly stated (page 542):

"I think the complainants' case rests entirely upon the fact that the parties were once copartners, and that the defendants sold to the other members of the firm the entire business, including a lease of the premises, and the good-will of the business; and that it was to continue as a going concern in the same line of business."

An exhaustive note on this subject will be found in 17. C. C. A. at page 579. An examination of any considerable number of the cases on this subject will demonstrate that the rules here adverted to have quite uniformly been followed; where there has been an apparent deviation, the peculiar facts of the case in hand, rather than a change of doctrine, will be found to be the cause.

Our own decisions are in entire accord with those of other jurisdictions. The cases cited by plaintiff do not in any way conflict with the prevailing doctrine. They have been disposed of on their own peculiar facts. In *Lamb Knit Goods Co.* v. *Lamb Glove & Mitten Co.*, 120 Mich. 159 (44 L. R. A. 841), Mr. Lamb assisted in the organization of the complainant, and for a valuable consideration a former company, in which he was interested, transferred not only its physical assets but also its good will to the new company. It appeared that he had not expressly sold the exclusive use of his own name, but it was held that he was estopped under the facts of the case from claiming that the company did not take its name rightfully, and under the facts found to exist in that case, including the proven fact that the public actually had been deceived, an injunction was decreed. This case was followed and upon substantially the same conclusion of facts an injunction was likewise decreed in *Penberthy Injector Co.* v. *Lee*, 120 Mich. 174. In both cases there was actual deception to the public generally and the trade, and in both cases the doctrine of estoppel was applied.

In *Myers* v. *Kalamazoo Buggy Co.*, 54 Mich. 215 (52 Am. Rep. 811), the retiring members of the copartnership had sold for a valuable consideration their interest in the good will of the copartnership; thereafter they organized a corporation under a name so similar to that under which the old firm did business

as to mislead the public; they located their plant within a few feet of that of the old partnership, and put out advertising matter of a character to lead the public to believe it was dealing with the old firm. The doctrine herein announced applied to the facts of that case, required the granting of injunctive relief.

In *People's Outfitting Co.* v. *People's Outlet Co.,* 170 Mich. 398, the case was heard on demurrer to the bill. It was held that taking the allegations of the bill as true a case for equitable relief was made out.

*Finney's Orchestra* v. *Finney's Famous Orchestra,* 161 Mich. 289 (28 L. R. A. [N. S.] 458), was a controversy over the right to use the name Finney. Complainant was a corporation organized by the members of the orchestra who had by a voluntary association continued the business several years after the death of Mr. Finney. They were 23 in number. Defendant was organized by three members who had withdrawn from the association. None of the members of either orchestra appear to have borne the name of Finney. Disposing of the case upon the facts it was held that defendant's claim was not supported by proof and the prayer of the bill was granted.

In *Gordon Hollow Blast Grate Co.* v. *Gordon,* 142 Mich. 488, this court again applied the doctrine heretofore discussed to the facts of that particular case. The facts found were:

"The testimony leads fairly to the conclusion that defendants designed by use of the partnership name, by the connection of the partnership name with the names of articles manufactured by the partnership, and by advertising matter, to mislead the public and to injure the business of complainant, to the profit of the partnership business. To some extent what was designed has been accomplished"

—and the decree of the lower court was modified and affirmed.

An examination of these cases demonstrates that we have in each of them applied the rule here announced to a different and varying state of facts, and that this court is in accord with the prevailing doctrine, both in this country and in England.

Do the facts established by this record authorize the relief sought? There is no claim that the defendants Chaffee have by express contract transferred to plaintiff the exclusive right to use their family name; there is no claim that they have expressly covenanted not to use their family name in the furniture business in Grand Rapids. But one of them owned any stock in plaintiff company, and he but a comparatively small amount. When he sold it he did not either expressly or impliedly covenant not to engage in the furniture business under his own name or any other name. Defendants Chaffee were but employees of the company, paid for their services as other employees were, earning their wage as other employees did. Have they so circumscribed themselves as to be estopped from using their own name in the furniture business in Grand Rapids? We think not. It is pointed out by the plaintiff that they have acquired experience and a reputation for honesty and integrity while in the employ of the plaintiff; and it is urged that they should not be permitted to use such experience and reputation against their former employer. While they were in the employ of the plaintiff it was entitled to the benefit of their experience and their reputation. But when they left its employ the right to such experience and reputation ceased.

It is urged that great confusion has arisen by the use of the name adopted by the corporate defendant and considerable testimony to this effect of a general character was introduced by the plaintiff. We are not impressed from an examination of all the testimony, including the exhibits, that outside of some

petty annoyances, such as telephone calls and an occasional small payment of money to plaintiff, which belonged to defendant, that there has been any considerable amount of confusion, or that plaintiff has suffered annoyance consequential in any amount when the amount of their business is considered. Plaintiff's managers seem to have prepared for this lawsuit by filing such evidence of confusion as they were able to collect over some period. Their exhibits show that in several instances letters asking extension of time from persons owing defendant company came to plaintiff; around a dozen orders for goods specially advertised by defendant were received by plaintiff. In only one instance do these exhibits show dealing with defendant company under the mistaken belief that the party was dealing with plaintiff. Plaintiff's managers seem to have appropriated the business offered in the letters and filed them all for future reference. Plaintiff advertised its store as "The Big Store." When defendants' store was first started it was called "The New Store." Plaintiff insists this was done to lead the public to the belief that it was a branch of plaintiff's establishment. Defendants insist they called their place of business "The New Store" because their goods were all new and to attract trade which preferred new goods, and to differentiate from plaintiff's business. They insist that they are anxious, even more so than plaintiff, to avoid the impression that they are in any way associated with plaintiff's business. They show that they have not for some time advertised their store as "The New Store," and their exhibits show that in their advertising matter they state, "We are not connected with any other store." Plaintiff states this was not done until this suit was started, but admits that this expression is now constantly used. Plaintiff shows that goods belonging to defendant company have been delivered at its store, but the

proofs show that this caused defendants more inconvenience than it did plaintiff. We are satisfied that the confusion shown is inconsequential in amount, and that it is not due to any artifice on the part of the defendants or any of them. Plaintiff's proofs have not established a cause for equitable relief. It is not necessary for us to consider the question raised by plaintiff that while one may use his own name in a business he may not confer that name upon a corporation, as we are satisfied that defendants have not so used their family name in the name of this corporation as to lead the person of ordinary intelligence to believe he was dealing with plaintiff company, nor that defendants have exceeded the boundaries of fair competition.

We find no reason to disturb the decree of the court below and it is affirmed, with costs.

OSTRANDER, C. J., and BIRD, MOORE. STEERE, BROOKE, STONE, and KUHN, JJ., concurred.