**SOCONY–VACUUM OIL CO., Inc., v. ROSEN.**

**No. 8041.**

Circuit Court of Appeals, Sixth Circuit. Jan. 9, 1940.

Farnum F. Dorsey, of New York City, for appellant.

Casper W. Ooms, of Chicago, Ill., and Alexis J. Rogoski, of Muskegon, Mich., for appellee.

Before HICKS, HAMILTON, and ARANT, Circuit Judges.

HAMILTON, Circuit Judge.

The parties to this appeal are engaged in manufacturing and selling stainless stick lubricants, largely used for lubricating automobile parts not subjected to a high degree of friction or heat. Each sells its product in sticks packaged in cylindrical

metal boxes or tubes of striking colors with push bottoms.

This suit was brought by the appellee seeking to enjoin the appellant from engaging in alleged unfair trade competition. The trial court sustained the prayer of the petition and entered an interlocutory decree enjoining appellant and awarding appellee an accounting with reference to a Master from which this appeal is prosecuted.

Appellee's assignee, Harold Rosen, had been operating a gasoline filling and tire service station for many years prior to 1931 and discovered that when ordinary oil or grease was used on door parts and hood lacings of automobiles, dirty spots appeared and an easy flowing lubricant soiled the clothes of occupants. He also observed that when these parts were left without lubrication, squeaks and noises developed. In 1928, he began experimenting with ingredients for a lubricant which would eliminate these imperfections and in 1931 evolved one of slight potentiality, solid and molded into a candlelike stick about 4½ inches in length, ½ inch in diameter, wrapped in paper. It was sufficiently adhesive to stay on the metal to which applied and plastic enough to not liquefy or become brittle under varying temperatures and was reasonably waterproof, almost stainless, not easily wiped off and did not readily pick up dirt or dust. Rosen first manufactured his product and placed it on the market under the trade names "Door-Ease" and "Stainless Stick Lubricant, Universal Size." Some were packaged in multi-colored boxes, twenty-four sticks to a box, and some were only wrapped in cellophane. In 1932, as an incident to refinancing the manufacture and sale of his product, Rosen assigned his trade name and business to appellee, Florence Rosen, and continued with her and her husband, Leo Rosen, in the manufacture of the product under the name "American Grease Stick Company." The product was placed in use and sold by personal solicitation of dealers in lubricants, service station operators, garages and car dealers. Harold Rosen spent most of 1932 and 1933 consulting and working with the different car manufacturers, their engineering, testing and research departments with reference to this product and appellee spent approximately $25,000 advertising it.

After experimenting with the package, one was finally adopted of metal, approximately 1 inch in diameter and from 4½ to 5 inches in length with a push-up bottom on which was marked "push from bottom; as used, fill in with paper wad." They were marked "Door-Ease" or "Stainless Stick Lubricant," and were packaged six sticks to a box. The product was of a natural yellowish color, the result of the blend of materials used, and the sticks were later packaged in lithographed containers with an aluminum colored body and with blue printing.

About 1933, appellee produced these sticks for some of the major oil companies, using her trade mark "Door-Ease" but also adding the name of the company, such as those for the Shell Petroleum Company under the name "Shell Door-Ease," and those for Texaco Company, "Texaco Door-Ease," etc. Many of the large petroleum distributors undertook the distribution of appellee's product and published lubrication charts to guide service station attendants in lubricating automobiles in which they recommended appellee's stick. Many automobile manufacturers, including Studebaker, Buick, Pontiac and Oldsmobile, specified its use by its trade name "Door-Ease" in their service manuals and frequently published an illustration of the shop-stick size package. Appellee's standard package was also sold to and by independent jobbers and distributors, large and small tire and oil companies, automobile accessory dealers, service stations, garages, etc.

In 1933, appellee negotiated with appellant for the sale of the "Door-Ease" sticks in a bracket which could be fastened to a bench or lubricating panel, which it had theretofore been selling the White Star Company, its subsidiary. At this time the Pontiac, Buick and Chevrolet Companies were recommending the use of appellee's "Door-Ease" to the trade. Appellant bought appellee's product and had it put up in a special package, trade marked "Mobil Door-Ease" and during the years from 1934 to 1936 appellee manufactured and sold it more than 152,000 packages and appellant published 7500 lubrication charts in 1934 and 10,000 in 1936, specifying this product to its trade for automobile lubrication.

Prior to 1936, appellant had manufactured and sold grease sticks of various sizes and colors and had packaged its other products with colors of red, white and black and had employed the insignia of the Pe-

gasus within a shield and had used the trade mark "Mobil."

Early in 1936, appellant discontinued the purchase of appellee's product, and began the manufacture and distribution of a stick lubricant named Mobil Dri-Lube, and adopted a sheet metal cylindrical tube of the same dimensions, form and general appearance of appellee's shop-stick size package except it had on it the Pegasus insignia. These containers were packed six to a flat sales carton, side by side, exactly as appellee's were packed. This lubricant in its natural state was of a grayish white, but appellant added a yellow dye which gave it a yellow color similar to appellee's product. Appellant manufactured its product in candle molds 5 inches long and over 1 inch in diameter, but then placed it in a forming ring 1 inch in diameter and cut the stick to the exact length of appellee's. Appellee notified appellant that its product was in packages confusingly similar to those long used by her but the package was not changed and appellant did not give notice of the change to its distribution organization, which had theretofore been using appellee's product, consisting of from 35,-000 to 40,000 filling stations, and 5,000 bulk plants. It did notify its thirteen division offices, which it claimed was to notify the others. However, the lower court did not so find.

The lower court found appellant filled numerous oral and written orders for appellee's product, Door-Ease, with its own Mobil Dri-Lube at filling stations and at its wholesale bulk plants and in some cases Dri-Lube was sent when the invoices of appellant's employees specified Door-Ease, some of the purchases being conducted by mail. When appellant discontinued the sale of appellee's product, it left many of her packages with its customers with which its new product was mingled.

Some purchasers, after receiving Dri-Lube when their orders were for Door-Ease, telephoned appellant's wholesale bulk plant employees and protested the substitution and were advised the products were absolutely identical except for a change in name.

■ The rule is well-settled that nothing less than conduct tending to pass off one man's merchandise or business as that of another will constitute unfair competition. Goodyear's India Rubber Glove Manufacturing Co. v. Goodyear Rubber Co., 128 U.S. 598, 604, 9 S.Ct. 166, 32 L.Ed. 535. Relief in such cases is granted where the defendant, by his marks, signs, labels or in other ways, represents to the public that the goods sold by him are those manufactured or produced by plaintiff, thus palming off his goods for those of a different manufacturer to the injury of plaintiff. McLean v. Fleming, 96 U.S. 245, 251, 24 L.Ed. 828. These legal principles have been so long established and are so well-known as to need no amplification. The difficulty arises in applying them to variant facts of different cases. Royal Baking Powder Co. v. Royal, 6 Cir., 122 F. 337.

Jurisdiction here rests upon diversity of citizenship and the issues involve questions of common law and hence are within the scope of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, but this is immaterial because the local law is in no way different from the general law announced on the subject. Clipper Belt Lacer Co. v. Detroit Belt Lacer Company, 223 Mich. 399, 194 N.W. 125.

■ Appellant insists that the form, color and dimension of appellee's grease stick and container are all conventional, descriptive and generic and therefore not subject to exclusive appropriation. This contention would be tenable but for the well-known rule that descriptive words, though not originally capable of exclusive appropriation, may, by association with a commodity, obtain a secondary significance denoting the origin of the goods from a single source, and thus superior right to their use may be acquired by the person who first adopts them. It is true that no absolute ownership in, or exclusive right to generic description of things sold is vested in any one and no relief is accorded to the first user even though a competitor may adopt his description. The policy of the law is to encourage competition and to permit a monopoly in the use of trade names only when they have become the absolute and exclusive property of the first user. Descriptive words can never become such property. William R. Warner & Co. v. Eli Lilly & Co., 265 U.S. 526, 44 S.Ct. 615, 68 L.Ed. 1161.

■ However, if, by use, such descriptive matter has been given by the original user, a secondary meaning amounting to a trade significance serving to identify his particular product and lending to it a value in trade solicitation and sales and a competitor coming into the field lat-

er uses it to deceive the public into believing it is acquiring the first user's product, thus palming off his own and taking trade from the first user, the law will protect the latter against such unfair practices. Elgin National Watch Co. v. Illinois Watch Case Co., 179 U.S. 665, 674, 21 S.Ct. 270, 45 L.Ed. 365. In other words, the law promotes fair, but prohibits unfair, competition. Dayton v. Imperial Sales & Parts Co., 195 Mich. 397, 161 N.W. 958; Barton v. Rex-Oil Co., 3 Cir., 2 F.2d 402, 40 A. L.R. 424; Shaler Co. v. Rite-Way Products Co., 6 Cir., 107 F.2d 82.

Since the essence of unfair competition consists in palming off, either directly or indirectly, one person's goods as those of another, the question of intent to deceive is involved though it is not necessary to prove it by direct evidence. It may be inferred from circumstances and will be presumed where the resemblance is patent and the probability of confusion obvious.

The facts found by the lower court show that the appellee's assignor, through his experience in the lubrication of automobiles, developed a product superior to that theretofore in use and, through his industry and expenditure of money by the appellee, built up a trade by which the public became acquainted with an article distinctive in color, size, shape and use, put up in containers in such a way that it would be recognized by a prospective purchaser. The facts further show that appellant sought out the localities and places where appellee had created a demand for her product and placed its article for identical use in packages of such similarity as was likely to deceive the ordinary buyer making purchases under ordinary conditions.

With a practically unlimited field of distinctive names, shapes, sizes and colors of packages open to appellant for use when it entered into the manufacture and sale of the same product in which appellee was dealing, the fact that it chose to use a package of the same shape and size with the contents of substantially the same color as appellee's, is weighty evidence that appellant did so because of the good will earned by appellee and the high regard which her product had established in the industry. Akron-Overland Tire Co. v. Willys-Overland Co., 3 Cir., 273 F. 674.

In cases of unfair competition it is unnecessary to show as close an imitation as in those of trade marks. If the simulation of the competitor in the dress of his goods is sufficient to deceive the average purchaser, unfair competition exists even though there are such differences in imitation as would preclude a claim of infringement of a trade mark. Coats v. Merrick Thread Co., 149 U.S. 562, 566, 13 S.Ct. 966, 37 L.Ed. 847; Chesebrough Mfg. Co. v. Old Gold Chemical Co., 6 Cir., 70 F.2d 383; Northam Warren Corporation v. Universal Cosmetic Co., 7 Cir., 18 F.2d 774.

Considering the evidence as a whole, we cannot say the findings of fact of the lower court were unsupported or that its decree was clearly erroneous and we find no abuse of discretion in the granting of the injunction, or the form of the order. Borden's Farm Products Co. v. Ten Eyck, 297 U.S. 251, 261, 56 S.Ct. 453, 80 L.Ed. 669.

Appellant contends that appellee has shown no actual damages to her business or any measurable loss resulting from its alleged unfair competition and for this reason is entitled to no relief on this account. This contention must be denied. The rule prevails in Michigan that damages for unfair competition in a suit in equity must be confined to the loss actually sustained by the plaintiff as the direct and natural consequence of such acts and damages which are uncertain or speculative cannot form the basis of recovery. Liberty Oil Corporation v. Crowley, Milner & Co., 270 Mich. 187, 258 N.W. 241.

In patent, trade mark and copyright cases where there is a finding by the court of past infringement and the awarding of an injunction, an inquiry into the profits made or damages caused by defendant will normally follow. The same rule, though less imperative, applies in cases of unfair competition. Merriam Co. v. Saalfield, 6 Cir., 198 F. 369; Anchor Stove & Range Co. v. Rymer, 6 Cir., 97 F.2d 689. This rule, however, has an exception. An accounting will not be ordered where it is clear that there could be no substantial recovery. I. T. S. Co. v. Tee Pee Rubber Co., 6 Cir., 288 F. 794.

There is some evidence in the case at bar that appellee has suffered measurable damages or loss of profits, due to appellant's unfair competition. This being true, the order of reference was proper.

Armstrong Paint & Varnish Works v. Nu-Enamel Corporation, 305 U.S. 315, 336, 59 S.Ct. 191, 83 L.Ed. 195; Hamilton-Brown Shoe Co. v. Wolf Bros. & Co., 240 U.S. 251, 262, 36 S.Ct. 269, 60 L.Ed. 629. However, we in no way pass upon the sufficiency of the evidence as to the amount of damages or loss of profits, if any, sustained by appellee. The decree of the District Court is affirmed.