BELL *v.* SERVICE COAL CO.

1. TRADE-MARKS AND TRADE-NAMES—UNFAIR COMPETITION—DISTINGUISHING TELEPHONE LISTINGS.

Telephone directory listings as Service Coal Company in suburban communities near city in which it had three yards *held*, properly enjoined at suit of party who had been doing business for upwards of six years and serving such communities under assumed name of Service Coal & Ice Company where number given in such listings was such as to indicate to telephone operator that party called would pay toll charge and thereby divert customers from local concern by deception.

2. EVIDENCE—JUDICIAL NOTICE—TELEPHONES AND TELEGRAPHS.

In suit by coal dealer to enjoin use by rival dealer of assumed name so similar to plaintiff's as to lead to alleged confusion and unfair competition, court may take judicial notice that many orders would be given over telephone, and that similarity of names might lead to diversion of orders to defendant which were intended for plaintiff who had been in business for upwards of six years.

3. TRADE-MARKS AND TRADE-NAMES—MISLEADING PUBLIC.
  Courts should not lend their aid to schemes whereby the buying
  public may be misled.

Appeal from Oakland; Holland (H. Russel), J. Submitted April 14, 1937. (Docket No. 71, Calendar No. 39,429.) Decided May 21, 1937.

Bill by Hilton P. Bell against Service Coal Company, and Michigan Bell Telephone Company, Michigan corporations, for an injunction restraining defendants from publishing or causing to be published the name of Service Coal Company in certain telephone directories. From decree granting injunction, defendant Service Coal Company appeals. Affirmed.

*Harry N. Dell,* for plaintiff.

*Harold F. Coyle,* for defendant Service Coal Company.

BUSHNELL, J. Hilton P. Bell, doing business since 1930 in the city of Royal Oak and adjacent territory under the assumed name of Service Coal & Ice Company, obtained an injunction restraining Service Coal Company, a Michigan corporation, of the city of Detroit, from 'publishing its name in the telephone directories of Royal Oak, Ferndale, Pleasant Ridge, Berkeley, Hazel Park, Huntington Woods and Clawson, all located in Oakland county, and in the suburban section of the Detroit telephone directory covering these communities. The injunction also ran against the Michigan Bell Telephone Company.

One of defendant's yards is about 5 miles east of the center of Detroit, another is about 3½ miles

west, and the third is about 5 miles north and west. In addition to serving customers in the city of Detroit, defendant also serves those living in communities to the east, southwest and northwest of the city. Plaintiff's yard is located some 3 miles north of Eight Mile Road (the boundary between Wayne and Oakland counties) and about 11 miles north of the center of Detroit; it serves customers in Royal Oak and other communities located within a 4-mile circle from its place of business.

Prior to October 19, 1936, there was practically no competition between the parties, each confining its activities to the localities above described. On this date, defendant applied to the telephone company and received a special listing in the Royal Oak telephone exchange under the number 10101. It was stated by the local manager of the telephone office that those numbers in the 11,000 group of the Royal Oak exchange are "so far removed from the remainder of the numbers in use that the operator immediately distinguishes that as a foreign exchange, so that call is transferred to the corresponding number in Detroit and the toll charge is paid for by the Detroit customer."

We assume that this listing was designed to secure more business for the telephone company and for its subscribers. It also permitted those dealers in Detroit who obtained such telephone numbers to advertise their "Royal Oak Order Department" in various newspapers, although they did not, as a matter of fact, have a place of business in that city.

The trial court was of the opinion that, since plaintiff had used the name of Service Coal & Ice Company exclusively in the area served by him, the similar listing of defendant permitted it to injure plaintiff by diverting his customers through

deception. The court found that plaintiff had priority in the adoption and use of a name in its locality so similar to that sought to be used in this method by defendant, that equity should enjoin the telephone listing as stated.

The situation thus presented is controlled by *Schwannecke* v. *Genesee Coal & Ice Co.*, 262 Mich. 624, not cited in appellee's brief nor cited or distinguished in appellant's brief. Schwannecke had been doing business in Saginaw for 27 years under the assumed name of "Genesee Coal Company." Defendant corporation was organized 23 years afterwards in Flint where it was engaged in the business indicated by its title. When defendant corporation commenced doing business in Saginaw, it assumed the name of the "Genesee Ice & Fuel Company." We said:

"The question here presented is whether the defendant by using the word 'Genesee' in its assumed name thereby became engaged in unfair competition with plaintiff. It is a fact of which we may take judicial notice that many of the orders for coal would be given over the telephone, and, if a person who had been theretofore dealing with the plaintiff and knew that it had long been engaged in business as the 'Genesee Coal Company,' desired to make such a purchase and consulted the directory for the purpose of doing so and found therein the name 'Genesee Ice & Fuel Company,' he might well assume that in placing an order therefor he was dealing with the plaintiff.

" 'It is the words of a name which the eye first catches or rests upon which fix it in our minds.' *Grand Rapids Furniture Co.* v. *Grand Rapids Furniture Shops*, 221 Mich. 548, 552. * * *

"It (defendant) needed not the word 'Genesee' in its name to inform the people of the city of Saginaw and surrounding territory that it was en-

gaged in the ice and fuel business. It seems apparent that its purpose and design in the use of this name was to secure to itself a part of the business theretofore enjoyed by the plaintiff, and, in the language above quoted, 'they have no right, by imitative devices, to beguile the public into buying their wares under the impression they are buying those of their rivals.' "

See, also, *Hoover Co.* v. *Groger*, 12 Cal. App. (2d) 417 (55 Pac. [2d] 529).

We said in *Furniture Manufacturers Ass'n of Grand Rapids* v. *Grand Rapids Guild of Exhibitors*, 268 Mich. 685:

"Courts should not lend their aid to schemes whereby the buying public may be misled."

The decree is affirmed, with costs to appellee.

FEAD, C. J., and NORTH, WIEST, BUTZEL, SHARPE, POTTER, and CHANDLER, JJ., concurred.