FIRST NATIONAL BANK & TRUST COMPANY OF
KALAMAZOO *v.* FIRST NATIONAL CREDIT
BUREAU, INC.

1. CORPORATIONS—BANKS—CREDIT BUREAU—SIMILARITY OF CORPORATE NAMES—CONFUSION.

Findings of trial judge that plaintiff "First National Bank & Trust Company of Kalamazoo" had for years been customarily referred to as "First National" and that such words had acquired such a secondary significance as to be used alone in its advertising; that such words were the dominant words in the names of both plaintiff bank and defendant "First National Credit Bureau" which had recently commenced business in Kalamazoo and that confusion resulted by reason of defendant's use thereof *held,* supported by record in suit by bank to enjoin credit bureau from use of words "First National" in its name in conducting credit bureau business in Kalamazoo and vicinity, where it also appears plaintiff was constantly involved through operation of charge account cards in the collection of small debts as was defendant (CLS 1956, § 450.6).

REFERENCES FOR POINTS IN HEADNOTES

[1] 52 Am Jur, Trademarks, Trade Names and Trade Practices § 72 *et seq.*
[2] 52 Am Jur, Trademarks, Trade Names and Trade Practices § 14 *et seq.*
[3] 52 Am Jur, Trademarks, Trade Names and Trade Practices § 86 *et seq.*

2. SAME—SIMILARITY OF NAMES—CONFUSION.

    The policy of this State is to avoid such similarity of corporate names as to lead to confusion (CLS 1956, § 450.6).

3. SAME—SIMILAR CORPORATE NAMES—CONFUSION—DAMAGES.

    Proof of fraud or deliberate deception in the use of similar corporate names is not necessary to establish unfair competition as substantial similarity leading to confusion is deemed unfair, where it exploits to the plaintiff's damage a name, the value of which plaintiff has created (CLS 1956, § 450.6).

Appeal from Kalamazoo; Sweet (Lucien F.), J. Submitted June 7, 1961. (Docket No. 20, Calendar No. 49,010.) Decided November 30, 1961.

Bill by the First National Bank & Trust Company of Kalamazoo, a national banking corporation, against First National Credit Bureau, Inc., a Michigan corporation, to enjoin use of name in locality. Decree for plaintiff. Defendant appeals. Affirmed.

*Stapleton, Adams, Burgie & Kidston* (*Roger G. Kidston,* of counsel), for plaintiff.

*Avery Weiswasser* and *Russell V. Carlton,* for defendant.

EDWARDS, J. This is an appeal from an injunction restraining defendant from using the words "First National" as a part of its name in conducting its credit bureau business in Kalamazoo and vicinity.

Plaintiff, The First National Bank & Trust Company of Kalamazoo, is the largest bank in Kalamazoo, with a main office and 8 branches in Kalamazoo and adjacent counties. It has been in the general banking business in Kalamazoo and vicinity since 1863. Defendant, First National Credit Bureau, Inc., is a collection agency, with home offices in Detroit. It first established a branch office in Kalamazoo in 1959. Defendant functions entirely in the field of collection of small debts. It does not compete at all

in the general banking field and has employed the name "First National Credit Bureau" since 1932, presently operating 23 offices in Michigan and Ohio.

Defendant had located diagonally across from plaintiff when it opened operations in Kalamazoo in 1959. The evidence tended to show that defendant was not exactly scrupulous in making sure the people it did business with were aware they were talking to the credit bureau rather than the bank.

The reality of the problem is illustrated by plaintiff's exhibit 1:

"April 28, 1960

"Mr. Mark Putney, President
1st National Bank
Kalamazoo, Michigan

"*Dear Mr. Putney:*

"I have a good legitimate complaint against tactics used by the manager of your 1st National credit department.

"About 1 month ago, my wife's aunt and uncle, who have never owed anybody, received a call from this same man who was going to garnishee his wages. After receiving a good deal of abuse and insulting remarks from this uncouth manager they did convince him that he was looking for another man with the same name. It upset them and needless to say they closed out their account at the 1st National Bank.

"Unfortunately, I do not have an account at the 1st National—I would be down when the bank opens in the morning to close it—but I do buy several dollars worth of cashier's checks per month from your drive-in window. I'll be looking for another window.

"Now my personal complaint. I have owed Buck's Wrecker Service 10.00 for several months on a disputed bill which should have been billed to a previous employee of mine. I will acknowledge that I'm stuck with this bill and will pay. Apparently Buck's

turned this bill over to your collection department and this morning your collection manager called my wife and lowered the boom. On the 1st call she informed him that I was not home and she would give me the message. On the 2nd call she informed him that she knew nothing about the acct. . . . that she had nothing to do with the account . . . that I was self employed and she did not know where to reach me during the day. He arrogantly informed her that she was a high living liar . . . informed her that he is used to dealing with bums of our caliber . . . that he would give her 1 hour to come down with the money . . . that your legal department has obtained an 'Act of Execution' and would be out before 5 p.m. to take everything we had which amounts to approximately 74,000 more than the 10 dollars involved. Needless to say he upset her to no great end and caused her a great deal of mental anguish.

"When I get home I call this so-called manager of your credit department and he baits me into using strong language then informs me that our conversations is being recorded and that I'm really in trouble. You can check with this mgr. and transcribe what I had to say to him and put it on paper. I'll be very happy to add my signature to it.

"Very truly yours,

[s] R. J. Benson"

Eighteen witnesses testified to episodes where somewhat similar confusion between plaintiff and defendant occurred.

The circuit judge, in a lengthy opinion which reviewed the evidence, concluded:

"It is the conclusion of this court that the words 'First National' dominate the names of both plaintiff and defendant. They are the words that attract the eye of the reader. They are the words that by reason of the manner in which the plaintiff has emphasized them over and above the other words in its name, through its many advertising media, over·

many years, has built in the mind of the average person of this area the image of the plaintiff upon such person seeing the words 'First National.' * * *

"It is the conclusion and decision of this court from the record at the trial of this case that actual confusion did and does now exist; that such confusion was and is probable, and will continue to exist in the minds of many people of ordinary intelligence residing in this area for some indefinite period of time in the future; that such confusion arises by the use of the defendant in its corporate name of the words 'First National,' and that, consequently, the use of these words by the defendant in its corporate name is a violation of the provision of the statute set forth above.

"It is also the contention of the plaintiff that the defendant is guilty of unfair competition in the use of the words 'First National' in its corporate name. At the trial the defendant offered no proofs in explanation of its purpose in choosing the words 'First National' as a part of its corporate name. It does not do business nationally, but only in 2 States; it is not a part of a national system or organization; it is not specifically controlled by Federal laws. It is engaged in the field of finance in that in carrying out its corporate purposes it deals with money and credit."

Relying primarily on CLS 1956, § 450.6 (Stat Ann 1959 Cum Supp § 21.6):

"No corporation shall assume any name which is likely to mislead the public, or any name already in use by any other existing corporation of this State, or corporation lawfully carrying on business in this State, or so nearly similar thereto as to lead to confusion or deception,"

he enjoined defendant's use of the words "First National" in Kalamazoo and adjacent counties.

On appeal, defendant claims the names are not so similar as to occasion confusion, that they are not

competitive with the plaintiff, and that any prior troubles were due to an overaggressive manager who is no longer in charge of defendant's Kalamazoo office.

There is no question but that this record supports the important findings of fact of the circuit judge. The First National Bank & Trust Company of Kalamazoo had for years been customarily referred to simply as "The First National." These words had acquired such a secondary significance that the bank customarily used them alone in its advertising.

The record also demonstrates conclusively that substantial confusion did result from the employment of the name "First National Credit Bureau" when defendant opened its operation in Kalamazoo.

Defendant's testimony sought to establish that in other areas where it operated under the same name it had met no such complaints as those it was confronted by in Kalamazoo. Part of the reason for this may well be the strong secondary significance attached to the term "First National" in Kalamazoo. But an even greater reason lies in the fact that the plaintiff and defendant in Kalamazoo were operating in the same economic field.

Contrary to most banking practices, the First National Bank & Trust Company of Kalamazoo is the dominant factor in charge account service in its service area. It furnished a First National charge account card which was honored in over 300 stores. As a result, it was constantly involved in collecting small debts—the exact field of defendant's operations.

While there is no showing in this record that the plaintiff and defendant were actually in direct business competition, there is ample indication of substantial confusion.

The policy of this State is to avoid such similarity of names "as to lead to confusion." CLS 1956, §

450.6 (Stat Ann 1959 Cum Supp § 21.6).   See *Grand Rapids Furniture Co.* v. *Grand Rapids Furniture Shops,* 221 Mich 548; *Metal Craft Co.* v. *Metalcraft Heater Corporation,* 255 Mich 642.   In the first of these cases, this Court said (p 556):

"It [the statute] prohibits the assumption of a corporate name so similar as to lead to confusion without regard to whether unfair competition will result.   To apply the latter test in a case brought under the statute would nullify the purpose of its enactment."

We do not read the cases relied upon by defendant as holding to the contrary: *Central Mutual Auto Insurance Co.* v. *Central Mutual Insurance Company of Chicago,* 275 Mich 554; *Young & Chaffee Furniture Co.* v. *Chaffee Brothers Furniture Co.,* 204 Mich 293; *Detroit Savings Bank* v. *Highland Park State Bank of Detroit,* 201 Mich 601.   The basis for refusal of injunctive relief in these cases was factual. It was failure of the proofs to establish "positive proof of substantial injury or probable injury to plaintiff." *Central Mutual Auto Insurance Co.* v. *Central Mutual Insurance Company of Chicago, supra,* 560.

We cannot say that the chancellor exceeded his authority by entering an order reasonably calculated to support the established law of this State.

Even at common law it is frequently held that proof of fraud or deliberate deception is not necessary to establish unfair competition.   Substantial similarity leading to confusion is deemed unfair where it exploits to the plaintiff's damage a name, the value of which plaintiff has created.   *American Products Co.* v. *American Products Co.* (ED Mich), 42 F2d 488; *Vogue Co.* v. *Thompson-Hudson Co.* (CCA 6), 300 F 509; *North Cheshire & Manchester Brewery Company, Limited,* v. *Manchester Brewery Company, Limited,* LR 1899, 24 App Cas 83; 148

ALR 12, annotation, Actual competition as necessary element of trademark infringement or unfair competition.

See, also, Oates, Relief in Equity against Unfair Trade Practices of Non-Competitors, 25 Ill L Rev 643.

Affirmed. Costs to appellee.

DETHMERS, C. J., and CARR, KELLY, BLACK, KAVANAGH, and SOURIS, JJ., concurred.

OTIS M. SMITH, J., took no part in the decision of this case.