THRIFTY ACRES, INC v AL-NAIMI

Docket No. 54643. Submitted March 16, 1982, at Detroit.—Decided June 25, 1982.

Thrifty Acres, Inc., Meijer Super Markets, Inc., and Meijer, Inc., brought an action against Amir Al-Naimi, individually and doing business as Thrifty Acres Supermarkets, in the Oakland Circuit Court to enjoin defendant's use of the trade name "Thrifty Acres". The court, George H. Laplata, J., found that the trade name had acquired a secondary meaning, found that defendant had pirated the trade name, held that the business expansion doctrine applied, and enjoined its use. Defendant appealed. *Held:*

1. A trade name can acquire a secondary meaning without the existence of actual competition between the businesses. The question is whether the business alleged to be infringing on the trade name is exploiting words or symbols which have become associated in the minds of potential customers with the other business or whether the use of the words or symbols is causing confusion and deception. The court did not err in holding that "Thrifty Acres" had acquired a secondary meaning.

2. The business expansion doctrine is that the first appropriator of a trade name has a legitimate right to use it over the entire territory into which its business may reasonably be expected to expand. The court correctly applied the business expansion doctrine.

3. Evidence of pirating of a trade name justifies, in and of itself, the enjoining of its use. There was sufficient evidence of pirating to enjoin the use of the trade name by defendant.

Affirmed.

1. TRADE REGULATION — TRADE NAMES — SECONDARY MEANING.

A trade name can acquire a secondary meaning without the

REFERENCES FOR POINTS IN HEADNOTES

[1] 74 Am Jur 2d, Trademarks and Tradenames §§ 64 *et seq.*, 99.

[2] 74 Am Jur 2d, Trademarks and Tradenames §§ 139, 140.

Unfair competition: geographical extent of protection of word or symbol under doctrine of secondary meaning. 41 ALR3d 434.

[3] 74 Am Jur 2d, Trademarks and Tradenames §§ 88, 89.

existence of actual competition between the businesses; the
question is whether the business alleged to be infringing on the
trade name is exploiting words or symbols which have become
associated in the minds of potential customers with the other
business or whether the use of the words or symbols is causing
confusion and deception.

2. TRADE REGULATION — TRADE NAMES — BUSINESS EXPANSION DOC-
   TRINE.
   The business expansion doctrine is that the first appropriator of a
   trade name has a legitimate right to use it over the entire
   territory into which its business may reasonably be expected to
   expand.

3. TRADE REGULATION — TRADE NAMES — PIRATING.
   Evidence of pirating of a trade name justifies, in and of itself, the
   enjoining of its use.

*Miller, Johnson, Snell & Cummiskey* (by *Stephen C. Bransdorfer* and *Richard R. Hyde),* for plaintiffs.

*Mindell & Panzer* and *Zemke & Hirschhorn, P.C.,* of counsel, for defendant.

Before: BRONSON, P.J., and R. M. MAHER and J. R. ERNST,* JJ.

PER CURIAM. Defendant appeals as of right from an order entered in the Oakland County Circuit Court, prohibiting him from operating his inner-city Detroit grocery and housewares business under the trade name of "Thrifty Acres".

For purposes of this appeal, we adopt the trial court's statement of facts:

"The testimony of Frederick Meijer, chairman of the board and chief executive officer of the plaintiff establishments, was to the effect that in 1961 a contest was conducted to select a name for their retail store operation in western Michigan. After selecting and incorpo-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

rating the name 'Thrifty Acres, Inc.', on October 16, 1961 the plaintiff opened their first Thrifty Acres store at 1540 28th Street, S.E., in Grand Rapids, Michigan, on June 7, 1962. Thereafter, plaintiffs opened stores and commenced doing business as Thrifty Acres in. the following Michigan cities: Holland; Jenison; Grand Haven; Ypsilanti; Canton, Flint; Jackson; Ionia; Battle Creek; Traverse City; Taylor; Royal Oak; Wyoming; Sterling Heights; Burton; Muskegon and Saginaw. There was testimony that in February of 1971 the plaintiff began studies of the Detroit area for possible store locations, and on February 16, 1973 the Oakland Press published a story describing plaintiff's projected new stores for the Detroit area, following up with an article on April 25, 1973 regarding the establishment of Thrifty Acres stores in the Detroit area. Evidence was presented that seven sites have been acquired in the Detroit area by the plaintiffs for future stores. Numerous articles were printed in the trade journals of the grocery business, outlining the eastward movement of the Thrifty Acres banner into the Detroit area. Plaintiff's chief officer testified at length regarding the high standards maintained by his stores, such as clean restrooms, honesty in advertising, and sanitation measures in his meat markets. Additionally, the establishments provided facilities for the handicapped long before the state enacted legislation to that end. Plaintiff's chief complaints against the use of the name 'Thrifty Acres' are the difference in prices between defendant's store and those prices appearing in circulars distributed by plaintiff, and that defendant does not carry the items advertised by the plaintiff.

"Evidence was introduced that two complaints were filed with the Consumer Protection Division of the Attorney General's office by two patrons of defendant's store, and the complaints were charged to plaintiffs by the investigator. Any fair reading of plaintiff's exhibits 7 and 8 reveals that there was obvious confusion with respect to the name 'Thrifty Acres'.

"Additionally, there was evidence introduced that plaintiff was named as a defendant in a lawsuit brought in the United States District Court by a former employee of defendant for wages and restitution under the

Fair Labor Standards Act. Plaintiff was also named as a defendant in a lawsuit brought in the Circuit Court for Wayne County by a customer who slipped on a grape in the defendant's store.

"Substantial testimony was introduced regarding the areas of advertising: television, radio, and newspapers (circulars). The plaintiff's store in Taylor is approximately 12 miles from defendant's store located in Detroit, and thus within the radius of television, radio, and newspaper advertising coverage. In 1979 the plaintiff spent in excess of $5,000,000 in advertising in the Detroit area. An interesting and informative study conducted in 1977 in the Detroit area was presented by the plaintiff regarding the question as to whether there was customer confusion with respect to the use of the name 'Thrifty Acres'. The awareness study was based on sample questions asked of persons living in the area of defendant's place of business and resulted in a finding that there was confusion with respect to the advertising of Thrifty Acres as to whether it pertained to plaintiff's stores or any other business with that name. Plaintiffs presented substantial evidence that much time, effort, and expenditures of money were injected into the development of operations in the Detroit area.

"On October 22, 1973 defendant, Amir Al-Naimi, filed an assumed name certificate with the Wayne County clerk's office listing his business as Thrifty Acres Super Market. After his first store burned, the defendant opened a new store across the street and installed signs reading 'Thrifty Acres'.

"Defendant introduced evidence that his store was a family operation that catered to the people living in the immediate area of the store, mostly blacks and welfare recipients. The food items carried by the defendant are those primarily consumed by blacks, such as greens, chitlings, and hog jowls. It was the position of the defendant at trial that his operation is distinctly different from that of the plaintiff, and definitely not in competition with the plaintiff."

The first basis for the trial court's decision enjoining defendant's use of the "Thrifty Acres"

name was that the moniker had acquired a "secondary meaning". Defendant asserts, however, that, in light of the lower court's specific finding that "the evidence at trial did not preponderate in favor of plaintiff[s] regarding the question of competition between the parties", the court's determination that "Thrifty Acres" had acquired a "secondary meaning" is clearly erroneous. We disagree.

A trade name can acquire a "secondary meaning" without the existence of actual competition between the businesses. The question is whether the business alleged to be infringing on the trade name is exploiting words or symbols which have become associated in the minds of potential customers with the other business. *Boron Oil Co v Callanan,* 50 Mich App 580, 583-584; 213 NW2d 836 (1973), and authorities cited therein. We take the lower court's finding of no competition between the parties to mean that few, if any, of the Detroit inner-city customers who constitute the bulk of defendant's clientele would travel the distances necessary to shop for groceries and housewares in one of plaintiffs' stores. Conversely, we believe the finding suggests that plaintiffs' customers would not travel into Detroit to buy their groceries and housewares in defendant's store. Nonetheless, even in the absence of actual competition, a business is not allowed to exploit a name or symbol made valuable by another business entity. In this case, for instance, defendant may be attracting patrons who believe there is a connection between plaintiffs' and defendant's businesses. These customers, if they knew that, in fact, no such connection actually existed, might very well still decline to travel the distances necessary to patronize one of plaintiffs' stores, but might also

choose to shop in a grocery store in the area other than defendant's. Thus, although the evidence fails to show that defendant is actually taking customers away from plaintiffs, defendant may well be exploiting the use of the "Thrifty Acres" name and symbol and thereby be taking patrons away from other local grocers who do not use names which are similar to other well-established merchandising chains. In such situations, despite any proof of direct competition with the business associated with the trade name, the infringing business is still taking an unfair advantage over other competitors who do not use names which have developed a secondary meaning.

The foregoing is supported by the Michigan Supreme Court decision in *Montgomery Ward & Co, Inc v Ward Furniture & Appliance Co,* 327 Mich 582; 42 NW2d 747 (1950). There, the Court indicated that a trade name had acquired a secondary meaning when its use by another would lead to "confusion and deception". The decision in *Montgomery Ward* does not indicate that any actual competition existed between plaintiff and defendant. Rather, noting plaintiff's extensive operations and its advertising budget, the Court concluded that defendant's use of the name would cause confusion in the minds of the citizenry. See, also, *First National Bank & Trust Co of Kalamazoo v First National Credit Bureau, Inc,* 364 Mich 521; 111 NW2d 880 (1961); *Bell v Service Coal Co,* 280 Mich 172; 273 NW 435 (1937); *Grand Rapids Furniture Co v Grand Rapids Furniture Shops,* 221 Mich 548; 191 NW 939 (1923).

As in *Montgomery Ward,* plaintiffs established that they operate a number of general merchandise retail stores throughout Michigan. Plaintiffs further established that they have spent millions

of dollars on advertising which features and promotes its trade name, "Thrifty Acres". The trial court also noted in passing marketing studies presented by plaintiffs showing that 71% to 84% of food shoppers, depending on location in Southeastern Michigan, associated the term "Thrifty Acres" with plaintiffs' retailing business. The proofs also tended to show that the lesser name association of "Thrifty Acres" with plaintiffs in defendant's marketing area was a product of defendant's use of the name. Plaintiffs also presented photographs showing that defendant's "Thrifty Acres" sign was similar to its own in design and color scheme.

The lower court also properly applied the "business expansion doctrine": that is, that the senior appropriator of a trade name has a legitimate right to use said trade name over the entire territory in which it may be reasonably expected that normal expansion of the business will occur. See 74 Am Jur 2d, Trademarks and Tradenames, § 139, p 795. See, also, *Grocer's Baking Co v Sigler,* 132 F2d 498 (CA 6, 1942), and *Koffler Stores, Ltd v Shoppers Drug Mart, Inc,* 434 F Supp 697 (ED Mich, 1976).

Finally, although not reached by the trial court, we conclude that plaintiffs' assertion that defendant pirated the "Thrifty Acres" name is sufficiently proven on the record. Where actual pirating has occurred, this, in and of itself, will justify enjoining the use of a trade name. *Boron Oil Co, supra,* 583; *Tisch Hotels, Inc v Americana Inn, Inc,* 350 F2d 609, 615 (CA 7, 1965); 74 Am Jur 2d, Trademarks and Tradenames, § 129, p 788.

Defendant admitted that he must have known of the trade name, "Thrifty Acres", prior to his appropriation of the same. Defendant further stated that when he went to the Wayne County clerk's

office to file an assumed name certificate, he requested "Thrifty Food Center" and then "Thrifty Market", but these assumed names were taken. However, on cross-examination, defendant stated that he asked for "Thrifty Acres", "Thrifty Foods", and "Thrifty Food Center" all within a matter of three seconds, and he did not know which name he had requested first. Defendant further stated on cross-examination that he had not been told that "Thrifty Food" or "Thrifty Market" were unavailable as assumed names.

In addition, defendant's "Thrifty Acres" sign is substantially similar in color scheme and design to plaintiffs' sign. Furthermore, the exterior color of defendant's store is substantially the same exterior color as plaintiffs' stores.

Finally, the term "Acres" is not particularly descriptive of defendant's store which is less than one-quarter of an acre. It thus seems implausible that defendant's choice of the name "Thrifty Acres" was not motivated, at least in part, by an effort to appropriate the benefits associated with plaintiffs' efforts to make the "Thrifty Acres" name synonymous with high quality at reasonable prices.

Affirmed. Plaintiffs-appellees may tax costs.